## NORRIS v. BURNETT.

### [66 South. 332.]

1. EXECUTORS AND ADMINISTRATORS. *Accounting. Laches.*
   Where an administrator did not account for notes signed by him and held by the estate of his intestate, and the heir of the intestate did not require an accounting of him, his heirs cannot, after the lapse of more than thirty years demand such accounting, as they are barred by the laches of their ancestor; it appearing that all the immediate parties to the transaction were dead.

2. SAME.
   Whenever an action is brought in equity to compel a personal representative to render an account of the funds of the estate, the court will, irrespective of any statute of limitations, take into consideration the lapse of time in determining whether the complainant is entitled to equitable relief. And the court will refuse to order an accounting if the complainant has been guilty of such laches as to indicate bad faith, or to render it impossible or extremely difficult for the court to do justice between the parties.

APPEAL from the chancery court of Hinds county.
HON. P. Z. JONES, Chancellor.

Bill by Nettie H. Norris against Norris Burnett, and others. From a decree sustaining a demurrer to the bill, complainant appeals.

The facts are fully stated in the opinion of the court.

*Wells & Wells,* for appellant.

With respect to the question of laches we desire to say first, that if this court is to apply the doctrine of laches to this case it must disregard the decisions of this court which are pointed out in our original brief. We there take the position that the statutes of limitations could not begin to run until the administrator had filed his final account. We know of no reason why the same principle would not apply to the doctrine of laches.

Both parties may have been guilty of negligence in this cause and the statement of counsel for defendant, that it is absurd, does not meet the requirements of the case, because the authorities hold that both parties can be negligent in bringing suit; and it does not lie in the mouth of the defendants in this cause, while they have been negligent in making an account for John W. Burnett, their ancestor, to insist upon laches on the part of the complainants in this case.

Most of the cases cited by defendant's counsel in this case are old cases that occurred very many years ago. There was a time when the doctrine of the statute of limitation did not apply in courts of equity, and then it was that the doctrine of laches was peculiarly in force. But the Code of 1892 makes the statute of limitation applicable to courts of equity as well as law, and it is upon this statute that this court, in *Huston* v. *National, etc.*, 31 So. 542; and all subsequent cases on this point held that there is no question of laches remaining in this state.

It is true, that the supreme court of this state, in numerous decisions, had announced prior to the bringing of this suit that laches had no place in its judicial system.

The case of *Coman* v. *Tapley*, 101 Miss. 223, cited by defendant's counsel in their brief, recognizes in a very few instances, the doctrine of laches as formerly applied to courts of equity, and yet, that case is readily distinguishable from the case at bar. It says of laches: ''Laches, in legal significance, is not merely delay but delay which works a disadvantage to another.'' The truth is, in the case at bar the delay was advantageous to the defendants in the case. It is true, there were some changes in conditions, but those changes were made where the parties had actual knowledge from the record, of the existence of the rights of the plaintiff. There was not the slightest concealment of their rights, they knew from the record that the administrator had not made a final settlement, and said records disclosed also the fact that he had

collected a large amount of money and had not accounted for the same. The records disclose, with perfect clearness, the rights of the complainants in this cause, and each and all of the defendants were well aware of it.

The conditions of the parties in this case have never been, in good faith, changed so that they cannot be restored to any right which they ever had. All of the proof in the case with reference to that accounting can be gotten from the records, and is referred to in the bill with so much distinctness and clearness, that the parties cannot claim that they were ignorant thereby. We respectfully submit that the law in all ages has made constructive notice as binding upon a party as actual notice.

If this court holds that this case is defeated by laches, it will practically overrule a large number of cases, among them *Westbrook* v. *Munger,* 61 Miss. 336; *Hill* v. *Nash,* 73 Miss. 862. And it will also repeal section 2732 of the Code of 1892. The case of *Westbrook* v. *Munger,* 61 Miss. 336, holds that no delay short of the time fixed by some statute of limitations will bar a creditor seeking the enforcement of his claim against the estate of a decedent, and we are confident that the court in this case will not overrule this. The case of *Taylor* v. *Board of Supervisors, etc.,* 70 Miss. 87, will also have to be overruled. The case of *Huston* v. *Building Association, etc.,* 80 Miss. 32, holds that the doctrine of stale claims does not prevail in this state, and cites the statute (Code of 1892, section 2731) as sustaining the position.

All of these cases (and others), hold that after that statute was passed, the doctrine of laches or staleness was done away with, and in equity cases as well as law cases, the statute of limitations becomes effective, and thereafter laches were unknown to the jurisprudence of this state.

Section 2762 uses this language: ''Whenever there be a concurrent jurisdiction in the courts of common law and in courts of equity of any cause of action, provision

of this chapter limiting a time for the commencement of a suit shall apply to all suits to be brought for the same cause in a court of chancery.''

The case of *Comans* v. *Tapley,* 101 Miss. 220, is distinguishable from this in many respects. 1. That was a case to enforce a judgment against certain property and the laches were on the part of the plaintiff in that case. In the case at bar, it is the laches of the administrator and his sureties; for it was their duty to make the account, and they are the defendants here. 2. The decree sought to be enforced was an interlocutory decree, while here it is to obtain an accounting and decree for the amount due. 3. That case says: ''The doctrine of laches is founded principally on the equity maxim. He who seeks equity must do equity, and he must come with clean hands and the law serves the vigilant and not those who sleep on their rights.''

The defendants obtained money of complainants and all that is asked of them is to account for it. Certainly it would be inequitable to let them keep the money and not account for it, and it is not against equity and good conscience for them to be compelled to pay.

All the laches in this accounting are on the part of the deceased administrator and his decedents and privies in estate.

There is absolutely nothing in that case which applies to the case at bar, for, as we have said, the delay in making the account is all that can be predicated of the parties to this suit.

*Alexander & Alexander,* for appellee.

We have examined carefully the authorities cited by opposing counsel, and have failed to find anything save *obiter dicta* which if construed in the light of the facts of the particular case, uphold our contentions entirely. Judge Woods in closing his opinion in *Hill* v. *Nash,* 73 Miss. 849, made this statement: ''There is no such thing as a stale claim, properly so called in this state.''

We are fortunate indeed that we can maintain our position on the authorities cited by counsel for appellant. Examine *Westbrook* v. *Munger,* 61 Miss. 329, the very language better expresses our contention than we are able to do ourselves: "No delay short of the time fixed by some statute of limitation will bar a creditor seeking the enforcement of his claim against the estate of a deceased."

Of course there can be no enforcement of the doctrine of laches against one who has a right given him by an express statute of limitation. Examine again, *Taylor* v. *Board of Supervisors,* 70 Miss. 87: "Because of the existence of the statute, staleness is no defense."

All of these cases relied on by appellant are in perfect harmony with our contention. Laches exist irrespective of statutes of limitation, and it is not a departure to hold that during the time that a particular statute of limitation runs there can be no laches. We give herein a few cases as nearly in point as possible which we invite the court to consider. *Salmon* v. *Wynn et al.; Rives* v. *Morris,* 108 Ala. 527; 16 Cyc. 1, 163-164; *Street* v. *Henry,* 124 Ala. 156; *Brown* v. *Buena Vista County,* 95 U. S. 157, 24 U. S. (Law Ed.) 422; 12 Am. & Eng. Ency. Law, pp. 550-51; 12 Am. & Eng. Ency. Law, p. 589; 15 Am. & Eng. Ann. Cases, p. 493; *Lupton* v. *Janny,* 13 Peters, 381, 10 U. S. (Law Ed.) 210; *McGehee* v. *McGehee,* 41 La. Ann. 657, 6 So. 253; 15 Am. & Eng. Ann. Cases, pp. 483-84; *Cooper* v. *Cooper,* 61 Miss. 649.

"Bills for an accounting have been dismissed because not presented within a reasonable time." 16 Cyc. 155; *Atkinson* v. *Robinson,* 9 Va. 393. "The bill was filed in 1809 where the transaction occurred prior to the Revolution." *Moores* v. *White,* 6 Johns Ch. (N. Y.) 360. "The delay was thirty years and there were additional circumstances of laches."

An exhaustive search of cases directly in point gives us the few following authorities on this doctrine. There

does not appear to be any similar case in this state where laches was plead irrespective of any statute of limitation. *Bailey* v. *Ducan,* 2 T. B. Mon. (Ky.) 20; *Greenless. Adm'r.,* 1 Leigh (Va.) 460; *Hill* v. *Hill,* 70 N. J. Eq. 107, *Adm'r.* v. *Greenless et al.,* 62 Ala. 330; *Todd* v. *Moore* 62 Atl., 385; *Appeal of Phillips,* 13 Atl. 906; *Martain* v. *Campbell,* 35 Ark. 137; *Hall* v. *Hall,* 1 Del. Chan. 341; *Lntjen* v. *Lutjen,* 64 N. J. Eq. 774; *Hence* v. *Conover,* 31 N. J. Eq. 505; *In re Estate of Elizabeth Bently,* 9 Pa. 344; *Lafferty* v. *Turley,* 35 Tenn. 157; 2 Shrobart's Equity (S. C.), 27; *Horn* v. *Beatty,* 85 Miss. 504; *Johnson* v. *Jones,* 13 S. & M. 580; *Jones* v. *Smith,* 23 Miss. 215; *Buckner* v. *Calcote,* 28 Miss. 432; *Finney* v. *Harris,* 30 Miss. 36; *Carter* v. *Probate Judge,* 2 S. & M. 42.

At this point we refer the court to *Comans* v. *Tapley,* 101 Miss. 223, the facts of which case are perhaps even now recalled vividly by the present court. It would seem that the decision rendered by Judge Smith sets at rest all contentions of appellant that laches is unknown to our courts, and since the opinion overrules the findings of Judge Whitfield, who heretofore announced the rule adversely to appellees' contentions, it is possible our efforts and prolixity in this particular point in the case is useless to the court. This Comans case was reported since we began this brief, but we do not omit the authorities we have compiled because we feel the importance of the question submitted.

Smith, J. C., delivered the opinion of the court.

This bill, which was filed in the court below on the 6th day of February, 1912, alleges that on the 3d day of April, 1866, John W. Burnett executed and delivered to George W. Norris his promissory note for the sum of twelve thousand eight hundred and thirty dollars, and in order to secure the payment thereof executed and delivered to Norris a mortgage on certain land, describing it, situated in the first district of Hinds county, Mississippi, which

mortgage was duly recorded in the office of the chancery clerk of that county; that this promissory note was never paid; that on the 27th day of August, 1866, Burnett conveyed the greater part of the lands described in this deed of trust to W. D. Terry for the use and benefit of his wife, Caroline T. Burnett; that on the 11th day of November, 1871, George W. Norris died, leaving as his only heirs at law his son, Louis G. Norris, and his widow, Sallie B. Norris, who subsequently intermarried with Dr. E. M. Grant; that on the 5th day of June, 1873, Burnett was appointed administrator of the estate of George W. Norris, deceased, by the chancery court of the first district of Hinds county, and gave bond as such administrator in the sum of five thousand dollars, on which his wife, Caroline T. Burnett, and his daughter, Sallie B. Norris, were sureties; that Burnett died in 1874, leaving as his heirs his widow, Carrie T. Burnett, and the following children: Sallie B. Norris, who afterward married Dr. E. M. Grant, J. T. Burnett, Ruth Burnett, Norris Burnett, Golda Burnett, Edna Burnett, Callie C. Burnett, and G. M. Burnett; that Burnett's estate was never administered upon; that Burnett never filed a final account as administrator of the estate of George W. Norris, and since his death that no one has made a final settlement for him, and therefore the administration of the said George W. Norris' estate is still pending in the chancery court of the first district of Hinds county; that Carrie T. Burnett died on the 20th day of January, 1885, seised and possessed of certain described lands, and leaving as her heirs the children hereinbefore referred to as heirs of her husband, J. W. Burnett; that Mrs. Sallie B. Grant, who was formerly Sallie B. Norris, died in February, 1900, seised and possessed of certain described lands, and leaving as her heirs her husband, E. M. Grant, and her children, Louis G. Norris, Mrs. Sarah Grant Willing, C. Cecille Pleasant, and Walter Norton Grant; that E. M. Grant has since died, leaving all of his property to Mrs. Tillie

Grant, a wife by a subsequent marriage; that John W. Burnett left no property out of which any amount due by him as administrator of the estate of George W. Norris, deceased, can be made, and that neither Caroline T. Burnett nor Sallie B. Grant left sufficient personal property with which to pay what they will owe as sureties on his bond; that certain named persons now claim to own parts of the land described in the mortgage from J. W. Burnett to George W. Norris, through mesne conveyances from Carrie T. Burnett; that certain other named persons now claim to be the owners of, or to hold mortgages upon, certain lands owned by Mrs. Sarah B. Grant at her death; that some of the children, naming them, of John W. and Carrie T. Burnett are now dead, leaving certain named heirs; that on the 11th day of November, 1910, Louis G. Norris died, leaving complainants, who are his wife and children, as his only heirs at law. All of the heirs of John W. Burnett, Carrie T. Burnett, and Sarah B. Grant, together with the other named persons who now own, or hold mortgages upon, land formerly owned by them, were made parties defendant to the bill, the prayer of which was:

"(1) That a commissioner be appointed to compute and state the amount due on the indebtedness named in the mortgage which John W. Burnett executed to Geo. W. Norris, on or about the 3d day of April, A. D. 1866, with legal interest down to date, one-half to go to complainants.

"(2) That said commissioner compute and state, also, the amount of money which the said J. W. Burnett owes to the complainants in this cause on a final settlement of his accounts as the administrator of the estate of Geo. W. Norris, deceased, one-half to go to complainants.

"(3) That your honor will order, adjudge, and decree that the following land, described in said mortgage which was executed on the 3d day of April, 1866, by John W. Burnett to Geo. W. Norris, be sold as the law directs to

pay the amount due under the same as found by the commissioner in this cause, to wit (describing it)."

An inventory and one annual account filed by John W. Burnett on July 23, 1874, as administrator of the estate of George W. Norris, were filed as exhibits to this bill, but in neither of them did he charge himself with the note alleged in the bill to be due by him to Norris. A demurrer was interposed to this bill, one of the grounds of which is the laches on the part of Louis G. Norris, through whom appellants claim. This demurrer was sustained, and an appeal granted to settle the principles of the case.

The facts of this case bring it squarely within the rule announced in *Comans* v. *Tapley,* 101 Miss. 203, 57 So. 567, Ann. Cas. 1914B, 307. The long and unexplained delay in instituting this suit, coupled with the present situation of the parties thereto, render it inequitable for the court to grant the relief prayed for. All of the parties to the transactions here complained of are now dead, and it will be practically impossible for the court to determine whether or not the note alleged to have been executed by Burnett to George W. Norris was in fact ever paid. Louis G. Norris' long inaction strongly indicates that he did not claim that his grandfather was accountable to him for the note alleged to have been executed to his father. For aught the court can now ascertain, that matter may have been amicably adjusted long prior to Louis' death.

In *Cooper* v. *Cooper,* 61 Miss. 694, this court, after holding that until an executor has been "discharged from any further accounting, the beneficiaries have the right to consider the trust an active one, and mere delay on the part of the trustee in settling with the court, and through it with the beneficiaries, and obtaining his discharge, cannot be considered such a breach of the trust as to set the statute in motion in his favor," use the following language:

"Nevertheless, we are not to be understood as saying that there may not be cases in which, after an actual suspension of the trust, there has been such long acquiescence or delay on the part of the *cestui que trust* as to require the court to deny him relief upon the ground of laches."

And the rule is, as stated by the author of the note to *Salmon* v. *Wynn*, 15 Ann. Cas. 483, that:

"Whenever an action is brought in equity to compel a personal representative to render an account of the funds of the estate, the court will, irrespective of any statute of limitations, take into consideration the lapse of time in determining whether the complainant is entitled to equitable relief. And the court will refuse to order an accounting if the complainant has been guilty of such laches as to indicate bad faith or to render it impossible or extremely difficult for the court to do justice between the parties."

*Affirmed and remanded.*