FLEMING *v.* FLEMING.

Division A. Jan. 14, 1952.

No. 38138 (56 So. (2d) 35)

**E. B. Taylor,** and **Farish, Keady & Campbell,** for appellant.

Holland O. Felts, Jerome S. Hafter, and John C. Webb, for appellee.

## Kyle, J.

The appellant, Albert Joseph Fleming, sued the appellee, Johnnie B. Fleming, for divorce in the Chancery Court of Washington County, alleging as grounds for divorce habitual cruel and inhuman treatment and adultery, and also alleging that the defendant at the time of their marriage had a living husband to whom she had been lawfully married and from whom she had never been divorced. The appellee in her answer and cross-bill denied the allegations of the complainant's bill and asked that she be granted a divorce from the appellant on

the ground of habitual cruel and inhuman treatment and that she be granted alimony and attorney's fees. The cause was heard before the chancellor on the pleadings and proof, and the court entered a decree dismissing the complainant's original and amended bills of complaint and granting to the defendant a divorce and alimony in the sum of $100 per month and an attorney's fee of $350. From that decree the appellant prosecutes this appeal.

The appellant and the appellee were married in 1942. The appellant was 56 years of age at that time, and the appellee was about 24 years of age. The appellant had been married twice before his marriage to the appellee, and had been divorced from each of his former wives. The appellee had likewise been married twice before her marriage to the appellant. The appellee's first husband was C. T. Ying, whom she had married in 1934 and from whom she was separated about one year later. The appellee obtained a divorce from her second husband a short time before her marriage to the appellant.

The appellant charged in his bill of complaint that his marriage to the appellee was invalid for the reason that the appellee's marriage to C. T. Ying had never been dissolved by death or divorce. The appellee admitted that she had been married to Ying, as alleged in the complainant's bill of complaint, but the appellee stated in her answer and the proof showed that several years prior to the date of her marriage to the complainant she had executed a waiver of process in a divorce action instituted by Ying in another state where Ying was then living, and that appellee had been advised by Ben Wilkes, a Greenville attorney, now deceased, that the divorce had been granted.

The appellant was a locomotive fireman for the Y. & M. V. Railroad Company and had retired from active service a short time before the divorce suit was filed. The appellant had accumulated a considerable amount of property prior to his marriage to the appellee and owned 23 rental houses in the City of Greenville, and a small

amount of stocks and United States Savings Bonds. At the time the divorce suit was tried the appellant was drawing retirement pay from the railroad company in the sum of $110 per month, and the gross income from his rental properties amounted to approximately $250 per month.

The appellant testified that a few weeks after his marriage to the appellee, the appellee threatened to kill him; but after this incident had occurred the parties seemed to have settled down to a peaceful married life which continued for a period of several years. In 1946 their marital relationship underwent a decided change. From that time on the appellant testified there were frequent quarrels and the appellant and his wife occupied separate rooms in their home. The appellee continued to attend to her household duties, and there was no quarreling, no angry words were passed between them, but "We just didn't sleep together any more." The appellant stated that his wife had a high temper and often threatened to beat him, and that the last time she threatened to beat him he picked her up and set her out the door. He stated that after he came back home to live in 1950 the appellee remained away from home until late at night, and some times did not get home until 4:30 in the morning; that she slept all day and did not prepare his meals for him. On cross-examination he admitted that he had been trying to get his wife to leave the house for a year, and that he had filed suit for divorce while his wife was still living in the house; that he had accused his wife of stealing some of the personal property in the house and that he had put a padlock on the house after he had filed suit for divorce.

The appellant testified that soon after his marriage to the appellee he turned over to the appellee the collection of the rents from his rental properties, and that the appellee thereafter handled the collection of the rents and the payment of the monthly bills out of the rental collections; and the appellee continued to handle the rental

collections until May, 1950, when the appellant took over the collection of the rents, about the time the divorce suit was filed. He admitted that he had given his wife the right to sign checks on his checking account in a bank at Vicksburg, and that she had exercised that privilege until sometime during the year 1947, when he stopped her from signing checks on that account for the reason that she kept the balance in the account so low that the appellant had to pay a service charge at the bank. The appellant accused the appellee of withdrawing without his knowledge or consent, and making use of $5,000 which he had deposited in a savings account in the Greenville Bank & Trust Company in 1948, and he charged that his wife had forged his signature to checks drawn on the savings account. On cross-examination he admitted that a note for $1,500 which had been paid out of the savings account bore a signature that looked like it might be his, "but," he said "she imitated it so perfectly, I hardly know it myself." The appellant was asked whether he knew anything about his wife's running around with other men, and his answer was, "Just what I was told."

The appellee, testifying in her own behalf, stated that when she and the appellant were first married they got along all right for two or three years, and then it got hard to live with him; that the appellant had a violent temper, would get mad with someone on the job and come home and take the spite out on her; that he would find fault with the food; and that "on one or two occasions he beat me, and asked me to leave the house, locked me out on two or three occasions, and I begged to get back in, and he finally opened the door and let me in." The appellee stated that the appellant used abusive language toward her at times, and threatened to throw her out of the house, and on one occasion did throw her out of the house. She stated that the last year they had lived together his mistreatment of her became more violent, and he told her that he was going to get her out of the house, "he was going to get a divorce and throw

me out.'' She was then asked the question whether this mistreatment of her had any effect upon her health. At this point the appellant's attorney interposed an objection to the testimony of the witness on the ground that the proof was incompetent under the pleadings. The court overruled the objection, holding that the general charge of habitual cruel and inhuman treatment contained in the cross-bill was sufficient to justify the admission of the testimony. When the objection was interposed the appellee's attorney asked the court for permission to amend the pleadings, if the court were of the opinion that such amendment was necessary. And in answer to this request the court said: ''I think the pleadings are sufficient.'' The appellee then testified that she suffered from nervousness, that the last several years of her life with the appellant had been spent in constant fear, that she tried to live with him as his wife, and that she cooked for him until June 22, 1950, when she moved away from the house after papers in the divorce suit had been served upon her; that she had not occupied the same bedroom with him since 1947, and that it was at his suggestion that they occupied separate beds. She stated that when she left the appellant's house on June 22, 1950, she carried away with her only her wearing apparel and an old bedroom suite that she had brought with her to the house when they were married.

The appellee confirmed the statements made by the appellant that soon after their marriage the appellant turned over to her the business of collecting and handling the rents from rental properties. She admitted that she received the monthly rental checks from the real estate agent who had immediate charge of the collection of the rents from the tenants, and that she cashed the checks and used the money to take care of household expenses, to defray the cost of repairs on the rental properties, and to pay water bills and taxes, and she stated that she gave her husband a part of the money collected by her each month. The appellee admitted that she owned and op-

erated a music record shop in the City of Greenville, and that she carried a stock of goods valued at approximately $1,000. She admitted that she had signed checks on the joint bank account kept by them in the Greenville Bank & Trust Company, but stated that her husband had given her permission to sign the checks.

The appellant offered in evidence the record of the ceremonial marriage between the appellee and C. T. Ying in 1934, and also a certificate of the Chancery Clerk of Washington County that the records of his office covering the period from 1934 to 1950 did not disclose that any divorce proceedings had been instituted in Washington County during that time to dissolve the marriage between the appellee and Ying. Proof was also made that between the years 1935 and 1942 Ying had lived in Missouri, Indiana, Illinois and Ohio, that he was still alive during the early part of 1942, but had not been heard from since that time. An attorney of the Greenville bar, whom the appellee had consulted about the signing of the waiver in the divorce proceeding instituted several years prior to her marriage to the appellant, testified as a witness for the appellee and corroborated the appellee's statement concerning the signing of the waiver.

The appellant's attorneys at the conclusion of the testimony presented a motion asking that the court remand the case to rules for further proof by a handwriting expert to determine whether the checks, notes and signature cards at the Greenville Bank & Trust Company, which had been offered in evidence by the appellant during the trial, bore the genuine signature of the persons whose names were signed thereto, or whether the signatures were forgeries. The court overruled the motion.

The appellant's attorneys argue in their brief on this appeal that the court erred in refusing to grant a decree annulling the marriage of the appellant to the appellee on the ground that the marriage was invalid because of the appellee's prior marriage to C. T. Ying, and in refusing to grant the appellant a decree of divorce on the

ground of habitual cruel and inhuman treatment, and in refusing to remand the case to the docket for further proof by a handwriting expert as to the genuineness of the above mentioned signatures to the checks, notes and signature cards introduced in evidence by the appellant.

The appellant was not entitled to a divorce from the appellee on the ground of the appellee's prior marriage to C. T. Ying. In the early case of Powell v. Powell, Adm'r, 27 Miss. 783, the Court said: ██ █ "The law favors marriage, and when once solemnized according to the forms of law, will not declare its nullity upon anything less than clear and certain testimony, * * *."

In 55 C. J. S., Marriage, Section 43, pages 893-894, it is said, "In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Accordingly the party attacking the validity of such second marriage has the burden of proving such invalidity, even though it involves the proving of a negative; and the burden of showing a valid prior marriage is on the party asserting it."

This Court has held in many cases that where in any proceeding the validity of a ceremonial marriage is attacked the burden rests on the party alleging its invalidity to prove it. Powell v. Powell, supra; Ladner v. Pigford, 138 Miss. 461, 103 So. 218; McAllum v. Spinks, 129 Miss. 237, 91 So. 694; Alabama & V. Ry. Co. v. Beardsley, 79 Miss. 417, 30 So. 660; United States Fidelity & Guaranty Co. v. Smith, 211 Miss. 573, 52 So. (2d) 351.

██ █ No sufficient proof was made by the appellant that C. T. Ying was alive at the time of appellee's marriage to the appellant, or that no divorce had ever been granted to either of the parties to the prior marriage. Appellee's proof, although insufficient to show an actual divorce, strongly supported the legal presumption that a divorce had been granted.

The appellant's attorneys admit in their brief that the evidence adduced upon the hearing before the chancellor was wholly insufficient to sustain the charge of adultery

made against the appellee. The only evidence which the appellant attempted to offer to support the charge of adultery was that of the appellant himself, who, when asked the question whether he knew anything about the appellee running around with other men, replied, ''Just what I was told,'' and the evidence of two other witnesses who testified that they had seen Gatemouth Moore's automobile parked in appellant's driveway two or three times. When the appellee was questioned about Gatemouth Moore's visits to her home, she stated that she and Gatemouth Moore's wife were friends, that they had been schoolmates at one time, and that Gatemouth Moore had visited in appellee's home two or three times but only when his wife was with him.

The appellant's attorneys contend that the court should have permitted the appellant to testify as to what others had told him about his wife's misconduct and appellant's attorneys cite in support of their contention the case of Hulett v. Hulett, 152 Miss. 476, 119 So. 581. But the opinion of this Court in the Hulett case does not justify the contention made by the appellant's attorneys that hearsay evidence is admissible to prove a charge of adultery in a case like this; and this Court in the case of Banks v. Banks, 118 Miss. 783, 79 So. 841, 842 stated plainly that ''The courts do not take hearsay or 'they say' evidence. Acts may be established by circumstances, but the circumstances must be those within the personal knowledge of the witness.''

We think that the evidence was clearly insufficient to support the appellant's charge of habitual cruel and inhuman treatment, and we find no error in the chancellor's refusal to remand the case for further proof as to the handwriting on the checks involved in the bank account. As the chancellor stated in his findings of facts, the appellant admitted that he permitted the appellee to receive and account for at will the rental income from his tenants, and that he permitted the appellee to make unlimited charge accounts, and authorized

her to draw checks upon his bank account in her own name, and in his name; and with these admissions in the bill of complaint, which were amply supported by the testimony of both parties upon the hearing, the chancellor was fully justified in overruling the motion to remand the case for further proof as to the handwriting on the checks.

The appellant's main contention on this appeal, however, is that the chancellor erred in granting to the appellee a divorce on the ground of cruel and inhuman treatment. ▆▆ The proof on this issue consisted almost entirely of the testimony of the appellee herself and the testimony of the appellant. We shall not attempt to summarize again the appellee's testimony in support of her charge of habitual cruel and inhuman treatment. But an analysis of the testimony of both the appellant and the appellee shows that the testimony of the appellee was corroborated on many points by the testimony of the appellant himself. For that reason the rüle laid down in the case of Anderson v. Anderson, 190 Miss. 508, 200 So. 726, has no application to the facts in this case. The chancellor in his opinion noted that the appellant himself had stated that after his return from the hospital in New Orleans in 1946 he and the appellee had a fuss, that he got mad and that he lived in a state of bad humor from that time on, and that he moved into a separate room and refused to have anything whatever to do with his wife thereafter, except that she remained in the house and did the house work and the cooking and served the meals; and the appellant stated that he had been trying to get rid of her ever since; and that condition continued until the time of the filing of the bill for divorce, when the appellant put the appellee out of the house and locked the door so she couldn't come back. The chancellor found that the separation was due to the fault of the appellant, and that the appellee was entitled to a divorce on the ground of cruel and inhuman treatment.

This Court will not reverse a chancellor on his findings of fact unless those findings are clearly contrary to the weight of the evidence, or are not supported by the weight of the evidence; and we cannot say that the chancellor was wrong in his findings upon the issues presented by the appellee's cross-bill.

██ ██ The appellant's attorneys also contend that the appellee's testimony relating to the alleged habitual cruel and inhuman treatment of her by the appellant was inadmissible under the pleadings for the reason that the details of the alleged cruel and inhuman treatment which were testified to by the appellant were not set out in her cross-bill. But the appellee filed no motion for a bill of particulars or to have the charges made more specific, and the chancellor held that the evidence was competent under the general charge of habitual cruel and inhuman treatment. The defect in the pleading, if indeed the pleadings were defective in that respect, could have been cured by amendment, and the appellee's attorneys offered to amend the cross-bill to conform to the proof when objection was made to the testimony after most of the testimony had been admitted without objection. But the chancellor ruled that no amendment was necessary. The testimony to which the objection was made related to facts which were almost entirely within the knowledge of the appellant and the appellant was afforded an opportunity to answer or deny the charges, or so much thereof as he had not already admitted. No harm was done by the court's failure to order that the pleadings be amended, and the appellant made no request for additional time to procure the attendance of other witnesses to rebut the appellee's testimony.

Objection has been made to the chancellor's allowance of alimony in the sum of $100 per month to be paid to the appellee and to the chancellor's allowance of a $350 solicitor's fee to be paid to her attorney for legal services rendered in the trial of the case in the lower court. But we think that in view of the very substantial value of the

appellant's property and the amount of income derived therefrom, the allowance of $100 per month as alimony was reasonable and proper. We also think that the amount allowed as a solicitor's fee was also reasonable and proper.

We find no reversible error in the record and the decree of the lower court is therefore affirmed.

The appellee has asked for the allowance of an additional attorney's fee to be paid to her attorney for legal services rendered in representing her on this appeal. And it is ordered that she be allowed the additional sum of $175 as a reasonable solicitor's fee or suit money for this Court to be paid to her or her order, or to the Clerk of the Chancery Court subject to her order.

Affirmed.