## MINOR *v.* HIGDON, ADM'R.

Dec. 1, 1952

No. 38498          10 Adv. S. 18          61 So. 2d 350

*Lyon, Davis & Price,* for appellant.

*Montgomery & Varnado,* for appellee.

518

KYLE, J.

This is an appeal by Roberta Oliver Minor from a decree of the chancery court of Humphreys County recognizing Zelma Taylor Minor as the lawful wife and sole heir of Will Minor, deceased.

Will James Minor, who was also known as "Bud" Minor, died intestate on May 12, 1951. At the time of his death he was a resident of Humphreys County and the owner of a small amount of real and personal property situated in Humphreys County. A few days after Will's death Roberta Oliver Minor filed a petition in the chancery court asking that she be appointed administratrix of the estate of the deceased, and in her petition alleged that she was the surviving widow of the deceased. The clerk entered an order appointing the petitioner as administratrix of the estate, and in the order undertook to authorize her to qualify and serve as administratrix without being required to give bond. At the regular June Term of the court the chancellor entered an order revoking the appointment of Roberta Oliver Minor as administratrix and appointed J. C. Higdon, county administrator, as administrator of the estate. Roberta then filed an amended petition for appointment as administratrix of the estate and in her amended petition offered to give bond as required by the statute. On the same day that the amended petition was filed Zelmo Taylor Minor, who also claimed to be the surviving widow of the deceased, filed a petition asking that she be appointed administratrix of the estate of the deceased.

The cause was heard by the court on June 14, 1951, upon the two petitions and the proof offered by the respective parties. Roberta Oliver Minor's attorney introduced in evidence a certified copy of the marriage li-

cense issued to Will and Roberta by the circuit court clerk of Sunflower County on January 12, 1942, and the minister's return on the license showing that the marriage rites had been performed on January 17, 1942. Proof was then made by W. W. Sparks, the employer of the deceased at the time of his death, that Will and Roberta had lived together as husband and wife for a period eight or nine years next preceding his death and that they were living together as husband and wife at the time of his death.

The attorneys for Zelma Taylor Minor introduced in evidence a certified copy of the marriage license issued to Will Minor and Zelma Taylor on October 5, 1921. And Zelma Taylor Minor was then offered as a witness to testify on her own behalf. Zelma testified that she and Will had been married on October 6, 1921, in Leflore County, and that she had never been divorced from Will. Objection was made by Roberta's attorney to the witness testifying concerning her relationship with the deceased, on the ground that such testimony would tend to establish her own claim against the estate of the deceased. But Zelma was permitted to testify; and Zelma stated that she and Will had separated in 1922, that the cause of their separation was that Will was going with Eldora Dorsey, "and he misused me, and when I knew anything he had married Eldora." Objection was made to this testimony, but the objection was overruled. Zelma stated that she had then married another husband, Clarence Robinson, in 1923, and that she lived with Clarence nine or ten months; that the marriage ceremony was performed under a formal marriage license at the courthouse in Belzoni. She stated that Will had married Eldora prior to the date of her own marriage to Clarence; that she thought that Will had obtained a divorce, and that was why she had married Clarence. She stated that she had never obtained a divorce from either of her husbands. She stated that she and Will had lived together as man and wife in Swiftown and in Belzoni until the

date of their separation soon after their marriage, and that she had never known that Will had married Roberta. Zelma's attorney then offered in evidence certificates of the chancery clerks of Leflore, Washington, Sunflower and Humphreys counties, showing that no divorce decree had been rendered in any of those counties in any divorce proceeding between Will and Zelma between October 5, 1921, and the dates of the certificates.

Roberta's attorney then offered rebuttal testimony which tended to show that Will and Zelma had never lived together as husband and wife, and that the certificate of the minister who performed the marriage ceremony between Will and Zelma had never been returned to the circuit court clerk to be recorded until after Will's death.

The chancellor took the case under advisement for a decision in vacation; and on July 13, 1951, a third claimant, Eldora Dorsey Minor, filed a petition in the same cause seeking to establish her rights as surviving widow of the deceased. In her petition Eldora asked that the other two claimants be summoned to appear and answer her petition and that publication be made for the heirs at law of Will Minor, deceased, and that she be recognized and declared to be the legal wife and sole heir of the deceased. There is no proof of publication in the record to show that publication was made for the heirs at law, as prayed for in Eldora's petition, but there is a statement in the brief filed by the appellee's attorneys which indicate that such publication was made. But this is unimportant for the reason that the chancellor entered a finding against Eldora's claim, and no appeal has been taken from that finding or from that part of the decree which was entered denying her claims.

Roberta and Zelma filed answers and cross-bills to the petition of Eldora, and at the December term of the court the case was reopened for the hearing of further testimony on the issues presented in Eldora's petition, the allegations of which had been denied in the answers

and cross-bills filed by Roberta and Zelma. Eldora's attorneys offered in evidence a certified copy of the record of the marriage of Eldora Dorsey and Will Minor on September 11, 1922; and proof was then made that Eldora and Will had lived together until 1941, that Eldora and Will had separated in 1941, and that Eldora had married Jesse Evans soon after her separation from Will. Eldora's attorneys also offered in evidence certificates of the chancery clerks of Washington, Leflore, Sunflower, Humphreys and Yazoo counties, showing that no divorce proceeding had been filed in any of those counties by Will or Eldora for a dissolution of their marriage at any time during the period from September 11, 1922, to December 7, 1951.

The chancellor dictated into the record a statement of his findings of facts and his conclusions of law. The chancellor held that Zelma Taylor Minor was the lawful wife of Will Minor, that the marriage between them had not been dissolved by divorce during Will's lifetime, and that Zelma was the surviving widow of the deceased and entitled to inherit his entire estate, unless she had by her conduct forfeited her right to inherit. The chancellor stated that there was no evidence in the record to show that Zelma had abandoned her husband, Will Minor, but that the proof showed that Will had deserted Zelma and had married Eldora without Zelma's knowledge or consent and without obtaining a divorce from Zelma. The chancellor then commented upon Zelma's subsequent marriage to Clarence Robinson and the adulterous relationship which she maintained with him after her separation from Will; and the chancellor held that when Zelma married Clarence in 1923 without obtaining a divorce from Will she acted upon the legal presumption that Will had obtained a divorce from her before he married Eldora, and that Zelma's sin was not as great as that of Eldora and Roberta. And the chancellor held that the doctrine of equitable estoppel, or estoppel by conduct, did not bar Zelma from claiming her rights as surviving

widow and heir-at-law of her deceased husband. The chancellor then entered a decree dismissing the petitions of Roberta and Eldora and adjudging Zelma to be the surviving widow and sole heir-at-law of Will Minor, deceased. From that decree Roberta prosecutes this appeal.

The claims of Eldora Dorsey have been finally disposed of by the decree of the lower court from which she has prosecuted no appeal; and no appeal has been taken by any other person claiming as an heir of the deceased. Under these circumstances no question of heirship is involved here other than the rival claims of Zelma and Roberta, and the question presented for our decision at this time is whether Zelma was entitled to be recognized as the surviving widow and only heir-at-law of the deceased, or whether she was estopped by her conduct from claiming the rights of a surviving widow of the deceased, including the right to inherit his property and estate, as against Roberta.

(Hn 1) In our opinion Zelma was estopped by her conduct from claiming the rights of a surviving widow of the deceased. Zelma admitted in her own testimony that she had contracted a ceremonial marriage with Clarence Robinson in 1923 without obtaining a divorce from her former husband from whom she had been separated only a few months, and that she had lived with Clarence Robinson and had cohabited with him as his wife thereafter for a period of approximately ten months. She testified that she did not know at the time of her second marriage that Will had not obtained a divorce from her. But this was no excuse for her contracting a bigamous marriage relationship with a second husband. Zelma did know that Will was still alive, and that he was living in the same or an adjoining county, and that she had not obtained a divorce from him, and that she had not been served with a summons in any divorce proceeding that he may have instituted against her. Zelma's marriage to Clarence Robinson under these circumstances consti-

tuted a complete repudiation of her marital status as the wife of Will Minor.

The chancellor condoned Zelma's offense on the ground that Will had deserted Zelma and had married Eldora without Zelma's knowledge or consent. But this in our opinion does not relieve Zelma of the consequences of her own immoral conduct in contracting a subsequent marriage to another man without obtaining a divorce from Will. And it is not a matter of great importance that Zelma testified that her separation from Will was due to the fact that Will had started going with Eldora and that "he misused me." Whether Zelma's marriage to Will failed because of Will's unfaithfulness to Zelma or for some other reason, Zelma by entering into a bigamous marriage with Clarence Robinson in 1923 in effect renounced her marital relationship with Will, and she is now estopped by her own conduct from seeking to establish a right of heirship to Will's estate. If, in marrying Clarence Robinson, Zelma acted upon the legal presumption that Will had obtained a divorce from her prior to his marriage to Eldora and that she was no longer Will's wife, she should not be permitted after Will's death twenty-eight years later to attempt to nullify the effects of that presumption, for the purpose of establishing her right to be recognized as Will's surviving widow, by introducing testimony to prove that she had in fact never been divorced from Will and that her marriage to Clarence was unlawful and bigamous.

This Court has held in a long line of decisions that a wife may be estopped by a subsequent marriage from attempting to prove the invalidity of a later marriage of her former husband for the purpose of establishing her claim to the proceeds of life insurance policies payable at his death to his surviving widow or for the purpose of enabling her to assert her right to inherit his property as a lawful heir.

In the case of Woodson v. Colored Grand Lodge K. of H., 97 Miss. 210, 52 So. 457, the Court held that a wom-

an, who for many years, had acquiesced in a separation from her husband and in his subsequent marriage to another, and who herself remarried, was estopped, as against his second wife, to claim the benefits of insurance as his widow. In discussing the claim of the former wife to the proceeds of the insurance policy in that case the Court said: ''The question now is: Will she be permitted to assert that which is at variance with the condition she has accepted, and in accordance with which she has lived, in order to make herself the beneficiary under the insurance policy? * * * Under the facts of this case we have no hesitancy in saying that the first wife is estopped to introduce testimony proving her own turpitude, and contradicting that condition of affairs which she by her conduct has assented to be the true condition, and in accordance with which she has lived and acted for nineteen years.''

In the case of Williams v. Johnston, 148 Miss. 634, 114 So. 733, the Court held that where the husband had deserted his wife and lived apart from her for more than thirty years and had in the meantime married another woman without first having obtained a divorce, he was estopped by his conduct from claiming the right to renounce the will of his deceased wife, and take one-half of her estate.

In the case of Harper v. Fears, 168 Miss. 505, 151 So. 745, the Court held that where the first wife, not having heard directly from the husband from whom she was separated for more than seven years, remarried, and the husband after her remarriage also remarried, the first wife could not set up the illegality of her husband's second marriage in a suit involving her right to his estate. In that case the Court said: ''The appellant here, Mrs. Ray D. Harper, had contracted a second marriage when the marriage challenged took place. She should not be allowed to now set up the illegality of the marriage which may have been brought about by the fact of her marriage. The dead husband, Fears, cannot be produced to

defend his second marriage, and the law should clothe that marriage with every sanctity possible. * * * Under the facts in the case at bar, the appellant was estopped to set up her claim.''

In the case of Joy v. Miles, et al., 190 Miss. 255, 199 So. 771, the Court held that a wife seeking to set aside an allegedly invalid divorce decree obtained by her husband came into court with ''unclean hands,'' and was not entitled to affirmative relief, where she had married another man subsequent to the rendition of the decree, even if she did not know of the decree at the time of her second marriage. The Court said in its opinion in that case: ''Moreover, even if it be true—and the chancellor found to the contrary—that she did not know of the decree at the time of her second marriage, such want of knowledge would afford less excuse for having entered into the bigamous relationship with her second husband than if she had known of the divorce proceedings, since she did know that her former husband was still alive, and that she herself had not obtained a divorce.'' And the Court held that the fact that the wife did not remarry until after her former husband had married another woman following rendition of the divorce decree in her husband's favor did not prevent the second wife from pleading the first wife's remarriage in defense of the first wife's suit to set aside the divorce decree for the sole purpose of enabling the first wife to obtain life insurance which was left by the husband at the time of his death and which was payable to his widow. The Court in its opinion said: ''The case is controlled in principle, though not analogous on the facts, by what was said by this Court in the cases of Woodson v. Grand Lodge K. of H., et al., supra, and Williams v. Johnston, supra.

In the case of Walker, et al. v. Matthews, et al., 191 Miss. 489, 3 So. 2d 820, the Court, after citing the rule laid down in Williams v. Johnston, supra, and in Joy v. Miles, et al., supra, stated that desertion or abandonment is generally held to be a bar to any right of a sur-

viving husband or wife to share in the estate of the deceased spouse, and that where the appellee, Mattie Tate Matthews, who was the common law wife of the intestate, George Matthews, had separated from the intestate, and both Mattie and George had thereafter gone through statutory marriages with others and had recognized such marriages as valid, Mattie was estopped from asserting heirship to George's estate.

In the case of Stanley v. Stanley, et al., 201 Miss. 545, 29 So. 2d 641, the complainant had filed a bill against the second wife of her former husband, who had died, and also the children of the second wife, seeking to set aside and have annulled a divorce decree rendered in favor of the former husband approximately fifty years before the date of the filing of the complainant's bill, on the ground that the divorce decree had been fraudulently obtained and that the decree affected adversely the property rights of the complainant in her former husband's estate. And this Court affirmed the decree of the lower court sustaining a demurrer to the bill of complaint and dismissing the bill ''on the ground of laches, and because of the disadvantage and injustice that would result to the appellees by a decision to the contrary, without regard to the question of estoppel and failure of the appellants to come into court with clean hands.''

There is a difference of opinion among the courts of other states as to the effect of a second or bigamous marriage of a husband or wife upon his or her right to share in the estate of the deceased spouse.

In the case of Brown, Admr., etc. v. Parks, et al., 169 Ga. 712, 151 S. E. 340, 71 A. L. R. 271, the Court held that a wife who had separated from her husband, and married another man during the lifetime of her husband, was not estopped from asserting her rights as wife of the first husband on his death. In the case of Estes v. Merrill, 121 Ark. 361, 181 S. W. 136, the Court held that where a wife, believing that she was divorced, assumed

the marriage relation with another man, and, on the death of her first husband, set up the invalidity of such attempted divorce, it was held that she was not barred from dower in her first husband's estate if the second marriage was illegal or bigamous. In the case of Cox v. Cox, 95 Okla. 14, 217 P. 493, 34 A. L. R. 432, the Court in a majority opinion held that in the absence of statute, where a wife deserts her husband and contracts a bigamous marriage with another, she is not estopped or precluded from claiming her share in the estate of her husband.

The courts of Colorado, California, South Carolina and North Carolina, however, have applied the doctrine of estoppel in such cases where the wife after the separation has contracted a second ceremonial marriage with another man.

In the case of Israel v. Arthur, 18 Colo. 158, 32 P. 68, the plaintiff in error, petitioner in the lower court, sought to be recognized as the widow of the deceased. The evidence showed that she had repeatedly declared that she was married to a second husband before the death of her first husband; and she and her second husband admitted on the trial that they had lived and cohabited with each other and held themselves out to the public, as husband and wife, in the communities where they had so lived, prior to the death of the first husband. And the Court held in that case that the proof was sufficient to warrant the trial court in finding that the plaintiff in error had actually contracted and consummated the marriage between herself and the second husband before the death of the first; and the Court held that the plaintiff in error was barred from claiming as the widow of her first husband.

In the case of Moore v. Robinson, 139 S. C. 393, 137 S. E. 697, the Court held that under the Civil Code of South Carolina in 1922, sections 5237, 5333, where the wife voluntarily leaves her husband without sufficient

legal excuse and subsequently marries another man, without making diligent or reasonable inquiry to ascertain whether or not her lawful husband was living she relinquishes her right to dower and to a distributive share of her husband's estate. The opinion in that case was based upon the special provisions of the South Carolina statutes, which expressly provided for a forfeiture of a wife's right to dower and to a distributive share of her husband's estate under such circumstances.

In the case of Mohler v. Shank, 93 Iowa 273, 61 N. W. 981, 34 L. R. A. 161, the Court held that a wife was estopped to claim a share in her late husband's estate, as a widow, although a divorce obtained from her in a suit brought by the guardian for the insane husband was absolutely void, where she had accepted alimony under the decree and had contracted a subsequent marriage. In that case the Court said: "We can discover no reason why Mrs. Mohler should be allowed to masquerade in a court of justice as the widow of Anthony Shank, and at the same time claim that she was the wife of Mohler for about eight years before Shank died. Both the law and good morals forbid it. Having accepted the divorce as valid, in the way she did, she should be held to be estopped from maintaining any claim to any part of the estate of her former husband. The conclusion we have reached in this case on the question of estoppel is not directly supported by decisions of this Court, but it appears to us that it is in harmony with modern legislation upon the relation of husband and wife."

The decisions of our own Court which have been cited above and in accordance with which this case has been decided show that our own Court has adopted the principle that a wife or a husband who has contracted a bigamous marriage with another person during the lifetime of the spouse in whose estate a right to inherit is asserted is barred from asserting such right. And the principle laid down in those cases has been incorporated

in the Mississippi Workmen's Compensation Act by Chapter 412, Laws of 1950, wherein it was expressly provided that: "The term 'widow' or 'widower' as contemplated in this act shall not apply to any person who has since his or her separation from decedent entered into a ceremonial marriage or lived in open adultery with another."

The appellee's attorneys in their brief cite in support of their contention that the principle of estoppel should not be applied in this case the opinion rendered in the case of Williams v. Lee, 130 Miss. 481, 94 So. 454, 28 A. L. R. 1124, in which the Court said that a wife is made an heir to her husband's estate by statute, and the courts have no authority to engraft exceptions on the statute. But there was no bigamous marriage by the first wife in the Williams case; and the Court in its opinion conceded that there might be cases in which the wife by estoppel could be deprived of her right of asserting her heirship to her husband. The grounds of estoppel relied upon by the appellants in the Williams case were that Louisa, the first wife, knew of the second pretended marriage of her husband to Louella and that her husband and Louella were living together as man and wife and made no protest against the pretended marriage and the unlawful relation. The Court said in its opinion that the evidence showed no element of estoppel, that the nearest approach to it was mere silence on the part of the legal wife, and that mere silence on her part, with knowledge of her husband's pretended second marriage, did not estop her from asserting her right to inherit.

The appellee's attorneys in their brief also seek to prevent the application here of the rule laid down in the Walker case, supra, by pointing out that in the Walker case the Court found that "Mattie left George", and that Mattie had two children by the second husband and was living with him at the time of the trial; whereas, in this case, Zelma testified that Will deserted her before

she married Clarence, and she and Clarence separated 26 years before Will's death. But we cannot see that the factual differences mentioned above have any decisive bearing on the legal question presented for our decision in this case. If Mattie by contracting a bigamous marriage with a second husband had forfeited her right to claim as George's heir, the forfeiture would not have been any less effective if no children had been born to her by her second husband, or if she and her second husband had separated during George's lifetime. The bar which the law imposed against Mattie's claim of heirship to George's estate was based upon Mattie's misconduct in entering into a bigamous marriage with another man without obtaining a divorce from George.

Finally, the appellee's attorneys contend that the appellant was not the lawful wife of the deceased, and that she has no interest in the estate and, therefore, cannot raise the objection of estoppel as against the appellee. But there is no merit in this contention. (Hn 2) The record shows that Roberta Oliver was married to Will Minor on January 17, 1942, in a ceremonial marriage performed under a marriage license issued by the circuit clerk of Sunflower County, and proof was made that Will and Roberta lived together as husband and wife from the date of their marriage until the time of his death. The law presumes that the marriage between Will and Roberta was valid, and any party who attacks the validity of that marriage has the burden of proving its invalidity.

In the early case of Powell v. Powell, Adm'r., 27 Miss. 783, the Court said: "The law favors marriage, and when once solemnized according to the forms of law, will not declare its nullity upon anything less than clear and certain testimony, especially after it has been dissolved by the death of one of the parties." The principle laid down in that case has been reaffirmed and applied in numerous cases which have been decided by this Court

since the opinion in that case was rendered. Ladner v. Pigford, 138 Miss. 461, 103 So. 218; McAllum v. Spinks, 129 Miss. 237, 91 So. 694; Alabama & V. Ry. Co. v. Beardsley, 79 Miss. 417, 30 So. 660; United States Fidelity & Guaranty Co. v. Smith, 211 Miss. 573, 52 So. 2d 351; Fleming v. Fleming, 213 Miss. 74, 56 So. 2d 35.

Roberta's proof was sufficient to show a valid marriage between her and the deceased, and the validity of that marriage should be recognized until its invalidity has been established by clear and certain testimony offered on behalf of a party having a legal right to challenge its validity. The appellee in this case was estopped by her own conduct from challenging the validity of that marriage.

For the reasons stated above the decree of the lower court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

*Roberds, P. J.,* and *Alexander, Hall* and *Holmes, JJ.,* concur.