HARRISON, et al. *v.* G. & K. INVESTMENT COMPANY.

No. 41344 December 7, 1959 115 So. 2d 918

*Heidelberg, Woodliff, Castle & Franks, Gerald Mc-Millan,* Jackson, for appellants, Geo. M. Harrison, Joe R. Scroggins, D. A. Biglane, et al.

*Bruce C. Aultman,* Hattiesburg, for appellant, W. R. Fairchild Construction Company, Ltd.

*B. D. Statham,* Magnolia; *John K. Keyes,* Collins; *W. H. Watkins, Jr.,* Tylertown, for appellees.

ETHRIDGE, J.

We have here an appeal from an interlocutory decree of the Chancery Court of Pike County, appointing a receiver to take the possession and control of 160 acres of land in an oil field. Appellee asserts a fractional interest in the minerals, under an oil, gas and mineral lease. Ownership by appellants of the remaining interests therein is not challenged. This appeal with supersedeas was granted by a Justice of this Court, after it had been refused by the trial court. The issue involves the rule of estoppel of a husband to claim as an heir of his deceased wife, after marriage during her lifetime to another person without a precedent divorce.

On December 6, 1958, G. & K. Investment Company, a Mississippi corporation, filed a bill of complaint in the Chancery Court of Pike County against George M. Harrison and others, asking that the oil, gas and mineral leases on the entire interest claimed by the defendants be set aside, insofar as the leases cast a doubt, cloud or suspicion on the fractional leasehold estate in the 160 acres of land, allegedly owned by appellee, G. & K. Investment Company, and for other relief.

G. & K. Investment Company claims ownership of a leasehold interest covering an undivided one-seventh interest in the oil, gas and minerals in, on and under the N½ of the NW¼ of NW¼ and the NW¼ of SW¼ of Section 14, Township 2 N, Range 8 E, in said County

(hereinafter referred to as the 60 acre tract), and ownership of a leasehold interest covering an undivided one-eighth interest in the oil, gas and minerals in, on and under the NE¼ of NW¼, SW¼ of NW¼ and S½ of NW¼ of NW¼ of said Section, Township and Range (hereinafter referred to as the 100 acre tract); all of which land was patented by the United States Governmen to Ebenezer Bryant, but which 60 acre tract was thereafter conveyed by the patentee to his wife Omega Bryant, both of whom died intestate many years ago.

. The leasehold interest claimed by the appellee G. & K. Investment Company was alleged to be under and by virtue of an oil, gas and mineral lease executed by Joseph William Knox, as lessor, on May 12, 1958, to Louis H. Magee, as lessee.

Thereafter the said oil, gas and mineral lease was duly assigned by the said Louis H. Magee to the appellee G. & K. Investment Company.

The lessor of the said Louis H. Magee, to wit, Joseph William Knox, in executing the oil, gas and mineral lease is claimed by the appellee G. & K. Investment Company to have been the surviving husband sole heir at law of Alpha Bryant Knox, who died on August 12, 1934, owning the undivided interest in the 60 acre tract and in the 100 acre tract hereinbefore mentioned; and that the said Alpha Bryant Knox inherited from her father and mother, Ebenezer and Omega Bryant, a one-seventh undivided interest in the 60 acre tract and a one-eighth undivided interest in the 100 acre tract.

The appellee alleged that an oil well was then in production on the common property, and asked that a receiver be appointed to take charge of and control the entire 160 acre tract on the ground that the appellee was "in actual and imminent danger of loss of property" and that "irretrievable and irreparable injury" to the complainant G. & K. Investment Company would result if a receiver were not appointed.

The allegations of the application for the appointment of a receiver were denied, and it was averred by the defendants that neither Joseph William Knox nor the appellee owned any interest whatsoever in the land or minerals. A hearing on the application for the appointment of a receiver was set by a fiat of the court for January 8, 1959. On the day before the hearing, the defendants George M. Harrison and others, filed a sworn answer to the bill of complaint of the appellee, which did not waive answer under oath.

At the hearing of the application for the appointment of a receiver a motion was filed by the defendants to dismiss the application for a receiver, to sustain their plea in bar of the suit, and to dismiss the bill of complaint. The application for receivership was heard and on January 21, 1959, the trial court addressed a letter to all of the attorneys advising them that he had decided to appoint a receiver of the property, and requested that a decree be drawn accordingly. This was done on January 24, 1959, and the decree was so entered.

At the time of the signing of this decree the defendants moved the court for acceptance of a bond in lieu of receivership, as is provided for in the discretion of the court under Section 1358, Code of 1942, granting such power to the court, but this motion was overruled.

An interlocutory appeal from this decree was requested by the defendants but the same was denied and the appeal with supersedeas was granted by a Justice of this Court, and the amount of the bond in lieu of receivership was fixed by such Justice in the amount of $62,500, and the bond was accordingly given and approved.

The oil well or wells were in production on the 160 acres of land at the time of the hearing of the application for appointment of a receiver, but the proceeds from the production of oil through these wells are being held in abeyance, at least as to the fractional inter-

est claimed by the appellee G. & K. Investment Company, pending the outcome of this litigation.

It appears that Joseph William Knox, through whom the appellee claimed as the ultimate lessee, married Alpha Bryant Knox in August 1923; that they lived together as husband and wife until August 11, 1928, at which time the said Alpha Bryant Knox was committed to the Mississippi State Insane Asylum at Jackson, Mississippi, as an insane person.

On March 23, 1929, Joseph William Knox, while married to Alpha Bryant Knox, entered into a ceremonial marriage with one Lucile Brown in violation of the laws of the State of Mississippi. He continued to live with Lucile Brown until her death. During the lifetime of Lucile Brown, on March 27, 1930, Joseph William Knox went to the said State Insane Asylum and carried Alpha Bryant Knox before a notary public on Lynch Street in Jackson, Mississippi, and caused her to sign a waiver of the service of process on her in a divorce proceeding which was filed and heard during a term of the Chancery Court of Forrest County, Mississippi, on March 31, 1930. Although the said Joseph William Knox had lived with Alpha Bryant Knox for approximately 5 years before she was committed to the Insane Asylum he obtained a decree of divorce in the Chancery Court of Forrest County, Mississippi, where he resided, on March 31, 1930, and in which decree it was adjudicated that Alpha Bryant Knox was hopelessly and incurably insane, and which fact he contended was true at the time of the marriage, but unknown to him—a good ground for divorce. A certificate from Dr. C. D. Mitchell, Superintendent of the said State Insane Asylum, to the effect that Alpha Bryant Knox was in fact hopelessly and incurably insane, was marked filed on April 1, 1930, the next day after the granting of the decree of divorce from her at the instance of the said Joseph William Knox. Whether or not this certificate of Dr. Mitchell formed the basis of the adjudication by the

chancellor in the decree of the day before that Alpha Bryant Knox was hopelessly and incurably insane is not shown. But the decree also adjudicated that she was insane at the time of her marriage to Joseph William Knox, and that the latter did not know of such fact. However, he had lived with her for approximately 5 years after his marriage to her as aforesaid, prior to her commitment to the State Insane Asylum on August 11, 1928.

It was alleged in the answer of the defendants that someone "reported the wrongful action of the said Joseph William Knox to the grand jury sitting in Forrest County, Mississippi, for the purpose of bringing an indictment against him for the crime of bigamy;" that while the matter was being considered by the grand jury, a white friend of Joseph William Knox informed him that bigamy charges were pending before the grand jury; that acting upon the advice of his white informant, the said Joseph William Knox immediately filed his sworn bill for a divorce against Alpha Bryant Knox in the Chancery Court of Forrest County.

At the hearing of the application for the receivership in this cause, in the Chancery Court of Pike County, the defendants introduced Joseph William Knox as a witness, and he testified to the foregoing facts, and further that he was acting under coercion in obtaining the divorce from Alpha Bryant Knox in the Chancery Court of Forrest County, and to avoid a criminal prosecution.

It was further alleged in the answer of the defendants, and it is undisputed, that on April 7, 1930, the said Joseph William Knox again entered into a ceremonial marriage with Lucile Brown, the same person with whom he had entered into a ceremonial marriage on March 23, 1929.

The defendants further charge and aver in their answer in the Chancery Court of Pike County "that the said Joseph William Knox and all parties in privity with him are precluded and estopped from attacking

or questioning the validity of the decree entered by the Chancery Court of Forrest County, Mississippi, dissolving the bonds of matrimony between Joseph William Knox and Alpha Bryant Knox and that no attack, either direct or collateral, may be made by the said G. & K. Investment Company upon said final decree of the Chancery Court of Forrest County, Mississippi, in this proceeding or any proceeding filed in the Chancery Court of Pike County, Mississippi.''

The answer further alleges that ''the named defendants further charge and aver that the said Joseph William Knox expressed no interest in the property in controversy for a period of 24 years, after the death of Alpha Bryant Knox, and that Joseph William Knox and all parties in privity with this individual, are precluded and estopped from claiming an interest in the real property owned by Alpha Bryant Knox at the time of her death by reason of laches and equitable estoppel.'' As heretofore stated, answer under oath was not waived in the bill of complaint for the cancellation of the oil, gas and mineral leases as a cloud upon the alleged title of the appellee or in the application for the appointment of a receiver, and the answers of the defendants thereto were made under oath. At the hearing of the application for a receiver, the testimony of D. A. Biglane, who was introduced by the appellee, and the testimony of Joseph William Knox, who was called as a witness by the defendants, was the only oral testimony taken. Moreover, the testimony of Joseph William Knox admitted all of the material facts alleged as such by the defendants in their answers.

After the granting of the interlocutory appeal and, to-wit on the 28th of August, 1959, the attorneys for the respective parties stipulated and requested, in substance, that this Court should decide all of the controlling principles involved under the record before us, the same as if the hearing for the receivership and the plea of estoppel had been heard on the merits, and that we

finally dispose of the controlling principles of law on the issues involved in the case.

The chancellor stated on more than one occasion during the hearing that he was not hearing the case on its merits, and he stated in his written opinion that he was appointing the receiver for the reason that in his opinion the appellee had a probable right or interest in the property in controversy, and that a receiver should be appointed on account of the fact that one of the heirs at law of Ebenezer and Omega Bryant, other than Alpha Bryant Knox, was now an inmate of the State Insane Asylum, and that another one of such heirs was in the penitentiary in Ohio. The chancellor ordered that all of the existing contracts for the development of the land for oil should remain undisturbed and that any further agreements or contracts in regard thereto should be first submitted to the court for approval.

The appellee relies on Section 470 of the Chapter of Descent and Distribution in this state, which provides, among other things: "If a married woman die, owning any real or personal estate not disposed of, it shall descend to her husband, and her children or their descendants if she have any surviving her, * * *." In the instant case it is conceded that neither Joseph William Knox nor Alpha Bryant Knox had any children or descendants of children surviving them, and that she died intestate.

The appellee cites in support of its contention that it would be judicial legislation for this Court to engraft any exceptions on the above mentioned statute, the case of Williams v. Lee, 130 Miss. 481, 94 So. 454, 28 A.L.R. 1124.

In the case of William v. Lee, supra, the Court, in discussing the then statute of descent and distribution of property in this State, did say that: "The wife is made an heir to the husband. The courts have no authority to engraft exceptions on the statute. And, conceding that the wife by estoppel could be deprived of her

right of asserting her heirship to her husband, the evidence in this case shows no element of estoppel. The nearest approach to it was mere silence on the part of the legal wife. There is nothing in the record to show she either encouraged or assented to the illegitimate marriage of her husband. We cannot give our assent to the proposition that mere knowledge and silence on her part estopped her from asserting her heirship.'' In the instant case, however, there is no claim that Alpha Bryant Knox, an insane person, acquiesced by mere silence in the illegal marriage of Joseph William Knox to Lucile Brown, but the proof shows that by the affirmative and positive action of Joseph William Knox he married Lucile Brown the first time he had not either obtained or attempted to obtain a divorce from Alpha Bryant Knox, and the question presented is as to whether or not he can be heard to challenge the validity of a divorce decree that was obtained at his instance, at a time of approximately one year after he had entered into a ceremonial marriage with Lucile Brown without having obtained a divorce from his lawful wife Alpha Bryant Knox. We must conclude that the case of Williams v. Lee, supra, is distinguishable on its facts and in principle from the instant case.

This Court in the case of Minor v. Higdon, 215 Miss. 513, 61 So. 2d 250, recognized that Will James Minor died intestate on May 12, 1951, owning a small amount of real and personal property situated in Humphreys County, and that Zelma Minor, whom the trial court had held was entitled to inherit from the intestate Will James Minor, was, in the opinion of this Court on appeal, estopped from asserting such claim of inheritance because of the fact that after Will James Minor had deserted her she had entered into a ceremonial marriage with one Clarence Robinson without either Will James Minor or Zelma having obtained a divorce.

In the case of Minor v. Higdon, supra, this Court said among other things the following: ''There is a differ-

ence of opinion among the courts of other states as to the effect of a second or bigamous marriage of a husband or wife upon his or her right to share in the estate of the deceased spouse.'' The court then discussed the difference of opinion among the courts of other states and then stated: ''The decisions of our own Court which have been cited above and in accordance with which this case has been decided show that our own Court has adopted the principle that a wife or a husband who has contracted a bigamous marriage with another person during the lifetime of the spouse in whose estate a right to inherit is asserted is barred from asserting such right. * * *.''

The Court in its opinion had cited Woodson v. Grand Lodge K. of H., 97 Miss. 210, 52 So. 457; Williams v. Johnson, 148 Miss. 634, 114 So. 733; Harper v. Fears, 168 Miss. 505, 151 So. 745, 93 A. L. R. 341; Joy v. Miles, 190 Miss. 255, 199 So. 771; Walker v. Matthews, 191 Miss. 489, 3 So. 2d 820; Stanley v. Stanley, 201 Miss. 545, 29 So. 2d 641, and had considered the case of William v. Lee, supra, on which the appellee relies, and stated in Minor v. Higdon, supra, the following: ''But there was no bigamous marriage by the first wife in the Williams case; and the Court in its opinion conceded that there might be cases in which the wife by estoppel could be deprived of her right of asserting her heirship to her husband.'' But the Court further stated that the evidence showed no element of estoppel in the Williams case.

The appellee correctly observes in its briefs that in certain cases relied upon by the appellants the contest was between two women where each of them claimed to be the lawful wife and heir at law of the deceased, and involved the collection of insurance accruing upon the death of the decedent. That was true in the cases of Woodson v. Grand Lodge K. of H., supra, and Joy v. Miles, supra; but this was not the situation in the cases of Walker v. Matthews, supra, Stanley v. Stan-

ley, supra; and Minor v. Higdon, supra. The right of inheritance of real estate was involved in these last named cases.

It is likewise true that the annotation from 71 A. L. R. 285, cited in one of our cases, dealt with cases from California, Indiana, New Hampshire and North Carolina, which were based upon a statute of those states, respectively, which declared that the marriage of one spouse to another person without a divorce having been obtained from the former marriage would estop the offending spouse from inheriting from his or her former spouse, but our Court held the same to be true in this State in the absence of a statute in that behalf, in the cases of Minor v. Higdon, supra; Stanley v. Stanley, supra; and Walker v. Matthews, supra.

Moreover, in the case of Cratin v. Cratin, 178 Miss. 881, 173 So. 415, and particularly on the suggestion of error therein, the Court held that a husband could not have a divorce decree set aside where it was rendered at his instance, with knowledge, actual or presumed, of its irregularity.

Of course in the instant case Joseph William Knox is not asking that the divorce decree granted in Forrest County on March 31, 1930, be set aside, but in effect it is asked that it be disregarded as being void and of no effect, and for Joseph William Knox to be declared the surviving husband and sole heir at law of Alpha Bryant Knox, and that he be held to have inherited her interest in the land and minerals here in controversy as her sole heir at law.

It is true that our cases hold that an absolute void decree, order or judgment may be assailed anywhere on collateral attack, but the right to do so is limited to those who are not estopped by affirmative conduct, laches or some other equitable doctrine.

It would unduly prolong this opinion to discuss the factual situation involved in each of the cases hereinbefore mentioned, since it appears to be well settled

by these cases, whether they involve the collection of life insurance or the inheritance of real property, that where one spouse enters into a ceremonial marriage with another person without the bonds of matrimony having been dissolved between him or her and the former spouse, the person so entering into such bigamous marriage is estopped from inheriting any part of the estate of the former spouse.

 This conclusion renders it unneccessary that we reach the question of whether the receivership in the instant case was justified, since it follows under our holding that neither Joseph William Knox nor the appellee is the owner of any interest in the 160 acres of land or the minerals involved in the oil, gas and mineral leases, and that they were therefore without the right to obtain a receivership for the property involved.

Reversed and judgment here for the appellants.

*McGehee, C. J.,* and *Hall, Holmes* and *Gillespie, JJ.,* concur.