444 So.2d 477 (1984)
In re ESTATE OF Nathaniel BUTLER, Jr., Deceased.
No. 83-849.
District Court of Appeal of Florida, Second District.
January 4, 1984.
Rehearing Denied February 1, 1984.
Kevin Rule of the Law Offices of Russell D. Thomas, Sarasota, for appellant Georgia Mae Butler.
*478 Thomas W. Bell of Bell & Bell, Sarasota, for appellee Rosa Belle Butler.
LEHAN, Judge.
Georgia Mae Butler appeals from a judgment denying her petition for administration of the estate of Nathaniel Butler, Jr. The issue is whether the trial court correctly applied the doctrine of estoppel to prevent Georgia Mae Butler from asserting her rights as a widow of the deceased. We affirm.
The decedent and Georgia Mae were married in 1946. They lived together for a short time and then separated in 1947. Although the marriage was never legally dissolved, Nathaniel told Georgia Mae that he had "bought" a divorce. Georgia Mae believed him.
In 1950, Georgia Mae married James Whitfield in a ceremonial marriage performed by a judge in Sarasota County. Georgia Mae had two children by Whitfield and later had three children by three different men. Georgia Mae continued to be known as Georgia Mae Whitfield until some time after Nathaniel Butler's death. Georgia Mae never attempted to obtain a divorce from Nathaniel Butler.
Nathaniel Butler married Rosa Belle Butler in 1963 after telling Rosa Belle that he was divorced from Georgia Mae. Rosa Belle believed him. Rosa Belle and Nathaniel lived together continuously as husband and wife until Nathaniel's death in 1975. During this time Rosa Belle and Nathaniel had one child and adopted one child, both children taking the name of Butler and living with Rosa Belle and Nathaniel. The two children were minors at the time of Nathaniel's death. The marital domicile was titled in the joint names of Rosa Belle and Nathaniel, and the couple lived in that house continuously from 1965 until Nathaniel's death.
At some point Georgia Mae found out that she and Nathaniel had never actually been divorced. The record does not show when Georgia Mae learned this and does not show whether she learned it before or after Nathaniel's death. Georgia Mae did know that Nathaniel had married Rosa Belle. Georgia Mae saw and talked with Nathaniel about once a year up until his death.
Nathaniel died in 1975. On December 29, 1981, Georgia Mae filed a petition for administration of his estate, seeking as surviving spouse appointment as personal representative. Rosa Belle filed objections to the petition. After a hearing, the trial court found that Georgia Mae was estopped from asserting her rights as widow. The court found Rosa Belle to be more deserving and entitled to Nathaniel's estate.
On appeal, Georgia Mae argues that the cases relied upon by the trial court for the doctrine of estoppel are different in nature from the facts of this case because in those cases the person estopped acted in blatant and wanton disregard of the institution of marriage or was of such reprehensible character as to shock the conscience of the court. For example, in Doherty v. Troxler, 66 So.2d 274 (Fla. 1953), the surviving spouse, who was adjudged estopped, had married the decedent for the admitted purpose of acquiring an interest in her property, the marriage was never consummated by cohabitation, and the husband abandoned the wife after twenty-four hours of marriage. The husband later purposely and intentionally entered into a bigamous marriage with another woman with whom he lived for twenty years and with whom he still lived at the time of the first wife's death. The court found him to be reprehensible in character and without conscience or decency. In Nedd v. Starry, 143 So.2d 522 (Fla. 1st DCA 1962), the husband separated from the wife after about one and a half years of marriage and approximately one year later entered into a bigamous ceremonial marriage. Two months after that marriage he left without getting a divorce and bigamously married a third time. The chancellor in the case noted also that the husband commonly had sexual relations with other women during his travels. The chancellor stated that misconduct of such a flagrant and inexcusable character *479 showing a repudiation of marital obligations will estop the person from enjoying the rights of marriage. In Moye v. Moye, 160 So.2d 525 (Fla. 2d DCA 1964), the surviving spouse remarried with full knowledge and blatant disregard for the fact that she had not been divorced from her first husband. She also lived with different men, taking their names and considering them as her husbands at a time when Florida still recognized common law marriage.
Georgia Mae argues that those three cases cited by the trial court differ from this case in that those spouses were guilty of reprehensible behavior with total disregard for the validity of the first marriage. Georgia Mae argues that she was a victim of her husband's deceit in stating that he had bought them a divorce.
Rosa Belle cites Minor v. Higdon, 215 Miss. 513, 61 So.2d 350 (1952), cited with approval by the Florida Supreme Court in Doherty v. Troxler, supra. In Minor the court prevented a surviving wife from claiming under her deceased husband's estate where the wife had remarried without obtaining a divorce from the husband. The wife, Zelma, testified that she did not know at the time of her second marriage that her first husband had not obtained a divorce from her. "But this is no excuse for her contracting a bigamous marriage relationship with a second husband. Zelma did know that [her first husband] was still alive, and that he was living in the same or an adjoining county, and that she had not obtained a divorce from him, and that she had not been served with a summons in any divorce proceeding that he may have instituted against her. Zelma's marriage to Clarence Robinson under these circumstances constituted a complete repudiation of her marital status as the wife of Will Minor." 61 So.2d at 353.
In affirming the judgment of the trial court, we recognize that the Florida cases cited involve bigamy committed knowingly by the claiming spouse while the record in this case indicates that Georgia Mae believed herself to be divorced from Nathaniel when she married James Whitfield. However, as in Minor v. Higdon, at the time Georgia Mae entered into her second marriage, she knew that her first husband was still alive and that she had not obtained a divorce from him and that she had not been served with any papers in any divorce proceeding that he may have instituted. Georgia Mae's marriage to James Whitfield and her subsequent actions constituted a repudiation of her marital status as the wife of Nathaniel Butler. The evidence does not show when Georgia Mae learned there had been no divorce, but Georgia Mae lived as if she had been divorced from Nathaniel and made no attempt to represent herself as his wife until six years after Nathaniel died. Georgia Mae, after having taken advantage of the "divorce" that Nathaniel told her he had bought, cannot now claim the benefits of a marriage which she herself has repudiated by her subsequent conduct. Analogous to Nedd v. Starry, supra, Georgia Mae's abandonment of the marriage relationship with Nathaniel operates to estop her from asserting rights under that marriage.
AFFIRMED.
GRIMES, A.C.J., and SCHEB, J., concur.