FIRST NAT. BANK OF LAUREL *v.* JOHNSON.

(Division B.   Dec. 7, 1936.   Suggestion of Error Overruled, Jan. 18, 1937.)

[171 So. 11.   No. 32434.]

Welch & Cooper, of Laurel, for appellant.

Paul B. Johnson, of Hattiesburg, for appellee.

Argued orally by **Ellis B. Cooper**, for appellant, and by **Paul B. Johnson**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

For many years appellant bank has maintained an investment department, and for several years, and up to the time of his death in the spring of 1933, Mr. C. H. Ferrell, assistant cashier, was in immediate charge of that department. From time to time appellee, then a customer of the bank, had purchased investment bonds

through Mr. Ferrell, and particularly on April 2, 1924, he purchased through him, and the bank, bonds of the Pacific Spruce Corporation to the amount of six thousand dollars, the bonds bearing interest at six and one-half per cent., payable semiannually. These bonds were kept by appellee in a private box in the safety deposit vault of the bank.

On April 1, 1931, appellee took from the said bonds the interest coupons due on that day and deposited them to his account in the bank. The coupons having been forwarded by the bank for collection, they were returned to the bank on April 14, 1931, uncollected, and with the information that the Spruce Corporation had defaulted in its bonds, and that its affairs were in such condition that a bondholders' protective committee had been organized, and it was suggested that all bondholders forward their bonds to that committee. On this same day, the bank mailed a registered letter, addressed to appellee, returning to him the coupons and advising appellee of the above-mentioned information which it had received. This registered letter was delivered to a son of appellee sometime during the day of April 16, 1931.

According to the version of appellee, he was leaving his home in Laurel, on the morning of April 16, 1931, for a short trip to Florida, and that he went to the bank as soon as it opened that morning in order to draw from his checking account the expense money for the trip; that as soon as he entered the bank he was accosted by Mr. Ferrell who urged him to make an additional investment in the Pacific Spruce Corporation six and one-half bonds; and in his declaration appellee avers that Ferrell represented the bonds as being as good as the bank and even better than government bonds; that appellee had not then received or seen the letter about these bonds, registered to him by the bank two days theretofore, but believing and relying on the represen-

tations of Ferrell, he agreed to purchase bonds in said Spruce Corporation in an additional amount of six thousand dollars face value; that he and Ferrell then immediately went to the safety deposit vault of the bank and that appellee took from his private box therein currency in the sum of six thousand dollars, which he delivered to Ferrell, who then put the money "in the other vault, the big vault in the bank."

His version is further that Ferrell stated to him that the bonds were not then immediately in hand for delivery but would be in a few days, and that to evidence the transaction, Ferrell executed and delivered to him the following receipt:

"Laurel, Miss. 4/16/31.

"Received of J. J. Johnson Six Thousand Dollars For Pacific Spruce Corp. 6½ Bonds ———
"$6,000.00                              C. H. Ferrell, A/C."

Appellee states further that upon his return from Florida in about ten days, he received and for the first time saw the registered letter of April 14, and that he immediately went to the bank and challenged Mr. Ferrell upon the transaction and demanded the return of his money, but that Ferrell put him off by the representation that the bonds had been received and had been forwarded to the bondholders' protective committee who would see to it that everything would be all right. He states that several times thereafter he mentioned the matter to Mr. Ferrell, who gave, in effect, the same excuse. He admits that he did deliver the six thousand dollars in bonds of the admitted original purchase to Ferrell to be forwarded to the bondholders' protective committee and that Ferrell delivered to him the written acknowledgment thereof by the committee under date May 8, 1931, the acknowledgment specifically naming the bonds by numbers, which numbers were those of the purchase of April 2, 1924. Appellee admits also that he never at any time mentioned the matter to any offi-

cer of the bank, other than Ferrell, either before or after the death of Ferrell. Suit was not filed until March 30, 1936, and was for six thousand dollars with interest from April 16, 1931.

The bank filed the plea of the general issue, and a special plea of the three-year statute of limitations. Ferrell being dead, the bank was obliged to depend largely upon the evidence of the attendant circumstances; and the theory of the bank's defense, other than the statute of limitations, was that appellee had received the letter of April 14, 1931, before he came to the bank on April 16, 1931, and that what he did was that he went to his private bank box in the safety deposit vault, procured the six bonds of one thousand dollars each, already for seven years owned by him, and delivered them to Mr. Ferrell to be by him forwarded to the bondholders' protective committee, which was done as evidenced by the committee's receipt already mentioned; and that it was to evidence the delivery to him by appellee of the said bonds that Ferrell issued the quoted receipt. The bank kept a daily safe deposit vault record showing the hour and minute of each day when a customer entered the vaults; and this record shows that appellee entered the vault and box 718 therein at two twenty-five and two thirty-five p. m. of April 16, 1931, and at no other time that day. The bank records further show that no such sum as six thousand dollars was found in its unaccounted cash on that day or subsequently thereto, as would have been inevitable had this money been delivered in the bank's general banking vault on that day, as appellee states was done, and that there was never at any time any paper of any kind in the bank which would evidence or point to any such transaction as contended for by appellee.

Enough has been stated of the facts to present sharply the inquiry: What does the receipt, above quoted in exact words, mean, looking alone to the face of the receipt

and without the aid of anything by way of parol? Does it mean so viewed, that it was a contract to procure and deliver to appellee six thousand dollars in six and one-half per cent. bonds of the Pacific Spruce Corporation, or does it mean that appellee had delivered to the bank six thousand dollars in such bonds and that this was a receipt to evidence the delivery? Or rather than either of the above, does it not mean, looking alone, as we say, to the words of the receipt, that the bank had delivered to appellee the bonds mentioned and that appellee had paid for the same? Does it evidence a transaction to be completed in the future or one already completed? If it evidenced a completed transaction, it carried neither an acknowledgment of an indebtedness nor an obligation to pay, and the three-year statute of limitations would apply (Code 1930, sec. 2299).

It has been definitely and firmly settled by all our late decisions that, when a written instrument is relied upon to take a case out of the three-year statute, the language thereof must acknowledge an indebtedness or promise to pay in such terms as to render any supplementary evidence unnecessary. Blount v. Miller, 172 Miss. 492, 496, 160 So. 598. Any material fact which is missing in the writing and which is necessary to be supplied by parol in order to show that it means an acknowledgment of an indebtedness or a promise to pay brings the case within the three-year statute. City of Hattiesburg v. Cobb Bros. Const. Co., 174 Miss. 20, 28, 163 So. 676. The material fact that the writing was an agreement for a future performance, to-wit, to procure for appellee and deliver to him the bonds, if that was in fact the transaction, was necessary here to be shown by parol evidence; for without such parol proof the writing would mean, so far as can be told by looking at it alone, that it evidenced no more than a completed transaction. See, also, Federal Land Bank v. Collins, 156 Miss. 893, 127 So. 570, 69 A. L. R. 1068; Wally v. L. N.

Dantzler Lumber Co., 119 Miss. 700, 81 So. 489, and the cases therein cited and discussed. Milam v. Paxton, 160 Miss. 562, 134 So. 171, relied upon by appellee, is in entire harmony with our other cases, as a close examination of the facts of that case will disclose.

Appellee contends, however, that the statute did not begin to run until the alleged fraud was discovered by him and that this was not until March 13, 1936, when, in response to a letter of his attorney, the bondholders' committee wrote him that no bonds of the Spruce Corporation had ever been delivered to the committee for appellee other than the original six thousand dollars par value which the committee had acknowledged on May 8, 1931. The statute, in respect to concealed fraud upon which appellee relies, section 2312, Code 1930, is not that the statute of limitations shall run only from the time that the party to be affected received actual knowledge but from "the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." Enough of the facts have already been stated to show that immediately upon the return of appellant from Florida, and to accept his version of the transaction, he had sufficient knowledge to put him upon notice and upon guard; and the rule is that when, in respect to a matter in which he has a material interest, a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is chargeable with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed. 20 R. C. L. pp. 346-9, 46 C. J. pp. 543-5.

Appellee says finally that the plea of the statute of limitations was not read to the court or jury at the opening of the trial or during the taking of the testimony, and the judgment so recites. The plea was on file, however, at the opening of the trial and had been for some

five or six days theretofore. During the progress of the cross-examination of appellee by appellant's attorney, the latter directed a material portion of that examination to a development of the facts which would sustain that plea, and this was done in such a pointed way and with its direction so plain that astute counsel on the other side could hardly have been unaware of what was being developed, and the object thereof. And the facts having been thus sufficiently developed, and this by appellee's own testimony, the request for a peremptory instruction by relation to the plea inescapably raised the legal question, and upon the plea, established by the facts, the peremptory charge for appellant should have been granted.

Reversed, and judgment here for appellant.