STANLEY *v.* STANLEY *et al.*

(Division A.   March 17, 1947.)

[29 So. (2d) 641.   No. 36333.]

**Parker & Busby,** of Meridian, **U. B. Parker,** of Wiggins, and **Gardner & Backstrom,** of Gulfport, for appellant.

**Heidelberg & Roberts,** of Hattiesburg, **Frank Clark,** of Waynesboro, and **Welch, Cooper & Welch,** of Laurel, for appellees.

**McGehee, J.,** delivered the opinion of the court.

The appeal here is from a final decree whereby the bill of complaint filed by appellant was dismissed, with prejudice, after a demurrer thereto had been sustained and she had declined to plead further.

On December 11, 1894, Geo. Stanley obtained a decree of divorce from his wife, the appellant, Sidney Stanley, in the Chancery Court of Wayne County. During the next year thereafter, he married the appellee, Banie Stanley, and continued to live with her as his wife in the same community where the appellant also resided continuously until his death in 1944. In the meantime, he reared a family of eight children by his second wife, Banie Stan-

ley, all of whom are named as defendants in the case at bar. In 1927, the appellant married one Mr. Shirley, with whom she lived until, according to the allegations of her bill of complaint herein, she was told by her former husband, George Stanley, that she was not lawfully married to the said Shirley, when she then separated from the latter and was later divorced by him on the ground of desertion, long prior to the bringing of the present suit.

The bill of complaint herein is against the second wife, Banie Stanley, and her eight children, as aforesaid, who were born of this marriage to Geo. Stanley. The bill seeks to set aside and have annulled the divorce decree of December 11, 1894, on the ground that the same was fraudulently obtained and affects the property rights of the complainant, due to the fact that the said Geo. Stanley was seized and possessed of considerable real estate and personal property at the time of his death in 1944, most of which he devised to appellees under his will. The right of appellant to thus proceed by a suit of this nature is asserted under the authority of the case of Evans v. Brown, 198 Miss. 237, 21 So. (2d) 588, and the cases therein cited.

The decree of divorce rendered on December 11, 1894, recites that the cause was heard upon the bill, written proof, and the appearance of the defendant by an attorney in open court who consented to the cause being then heard. The name of the attorney referred to is not stated, but the decree was signed by W. T. Houston, Chancellor, and it allowed the divorce on the ground of desertion by the wife.

The bill of complaint and exhibits thereto in the present suit disclose the foregoing facts, and it is further alleged that prior to the rendition of the said decree of divorce, which is filed as an exhibit to the bill, there were two children, Arthur and Robert Stanley, born of the marriage between the complainant and the defendant in the former suit, and that the complainant, George Stanley, had theretofore driven the defendant, Sidney Stanley, with her

children, away from home without just cause; that no process was ever served upon the defendant in said divorce proceeding, and that she had no knowledge of the filing of the said suit until after the death of the said George Stanley in the year 1944; that she did not authorize any attorney or other person to enter an appearance for her in said cause, nor agree to a hearing thereof on the date of the rendition of said decree, or on any other date, but that the entry of appearance for her by an attorney was procured through the fraud and conivance of the said George Stanley and that therefore the said decree is null and void.

Notwithstanding the above-stated allegation that she, Sidney Stanley, did not know of the said divorce proceeding until after the death of Geo. Stanley, as aforesaid, even though he and his second wife had resided in the same community where she did for the next fifty years after the decree therein was rendered, she further alleges in her bill that by the said acts and conduct of the said Geo. Stanley (in remarrying and rearing a family of children), and "by his other acts, representations and conduct" he lead the complainant to believe, and that "she did believe that he was divorced from her because of his said acts, representations and conduct;" that so believing, she married the said Shirley, as hereinbefore stated.

In the instant case, the entries on the general chancery docket of the county in regard to the divorce suit are made an exhibit to the bill of complaint, and they disclose that it was filed by Geo. Stanley against Sidney Stanley on Oct. 22, 1894, and that a summons was then duly issued, but it is not shown to have been executed; these docket entries also refer to and disclose that the decree of divorce was entered in Minute Book 1 at Page 201 in the office of the chancery clerk.

It, therefore, clearly appears that if Sidney Stanley had made the slightest inquiry at one place in the county in which she lived where a divorce decree would have been rendered, that is, at the courthouse, she would have

ascertained from the general chancery docket the fact that she had been sued for divorce, and the book and page where the decree was recorded. Living in the same community where her former husband had married the appellee Banie Stanley, and where he continued to reside and rear his family of eight children, should have been sufficient to put her on inquiry, since she knew, according to the allegations of her bill of complaint in the present suit, that she had not been served with process in a divorce suit; and that she had not authorized an attorney or other person to enter an appearance for her. And, she was charged under the law with notice that no decree of divorce could have been granted against her except on service of process or an appearance. It was time for her to show that "there is no fury like that of a woman scorned," when she saw that her husband proposed to leave the support of their two children to her and rear a family by another woman, and without a divorce, in the very community where she lived, and where she had to rear her own. In other words, it is inconceivable, in view of her indifference to the circumstances, that Sidney Stanley could have believed that her former husband would contract and have celebrated another ceremonial marriage in the same community where she lived, and rear a family of children, unless he had thought in good faith that he had been divorced from her.

However, for the purposes of the demurrer which the trial court sustained, we must assume that she had no actual knowledge of the divorce proceedings until after the death of Geo. Stanley in 1944, and that he represented to her after she had entered into the bigamous marriage with Shirley that she had not been divorced from him, her former husband. We must also assume as true, for the purposes aforesaid, the allegations to the effect that she had been mislead by the conduct of Geo. Stanley when he married Banie Stanley, and began to rear a family of children by her, and also by his representations, the nature of which are not stated, into believing that

she, Sidney Stanley, was entitled to contract a second marriage. On this assumption, it appears that some of the elements of estoppel that were present in a number of the previous decisions of this Court are absent in the case at bar, in that Sidney Stanley alleges in her bill of complaint that when she was finally informed by her former husband that no divorce had been granted, she immediately separated from her second husband, and did not thereafter live with him at any time.

But, as stated in 20 R. C. L. 346, ''Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts.'' Also in 46 C. J. 543, cited in First National Bank of Laurel v. Johnson, 177 Miss. 634, 643, 171 So. 11, it is said, among other things, that: ''In other words, whatever is notice enough to excite attention and put the party on his guard and call for inquiry is also notice of everything to which it is afterwards found that such inquiry might have led, although all was unknown for want of investigation. And, in Comans v. Tapley, 101 Miss. 203, 224, 57 So. 567, 573, Ann. Cas. 1914B, 307, it was held that: ''The doctrine of laches is founded principally upon the equity maxims 'He who seeks equity must do equity,' 'He who comes into equity must come with clean hands,' and 'The laws serve the vigilant, and not those who sleep over their rights.' '' (Opinion on Suggestion of Error.) And this doctrine was reaffirmed in the case of Supreme Lodge Knights of Pythias v. Knights of Pythias, 102 Miss. 280, 59 So. 88; Norris v. Burnett, 108 Miss. 407, 66 So. 332; and Aetna Insurance Company v. Robertson, 131 Miss. 343, 94 So. 7, 28. In the latter case, there was quoted with approval certain language found in 21 C. J., p. 234, as follows: ''A court

of equity will refuse relief after inexcusable delay because of the difficulty, if not the impossibility, of arriving at a safe and certain conclusion as to the truth of the matters in controversy and doing justice between the parties, where the evidence has been lost or become obscured through the loss of documents, or through death or disappearance of one or more of the participants in the transaction in suit or of the witnesses thereto, or through impairment of the memory of participants or witnesses still living.'' See also 30 C. J. S., Equity, Sec. 119.

In the bill of complaint now under consideration, it is alleged that the court file in the divorce proceeding of 1894 is now lost; that the only records of the proceeding are the entries on the general chancery docket hereinbefore mentioned and the final decree appearing on the minutes of that court; and that Geo. Stanley is now dead. And, evidently the man who rendered the decree, Judge W. T. Houston, is now dead if he were sufficiently mature in years and experience at the bar to serve as a chancellor in 1894. And, since the name of the attorney whom the decree recited had entered an appearance for Sidney Stanley is not given, it appears that every one connected with that case, who is charged with fraud or misconduct, is either dead or unknown.

Moreover, if we should hold that the complainant in the present suit is not guilty of inexcusable laches in bringing a suit to set aside the said decree, we would be permitting a stigma to be placed on the name of Banie Stanley, the second wife of Geo. Stanley, and would allow his eight children to be bastardized. This Court held in the case of State v. Woodruff, 170 Miss. 744, 150 So. 760, 765, that: ''The doctrine of laches or staleness, which is constantly growing in favor among the courts of this country, is well established and clearly recognized in this state.''

The setting aside of the said decree would therefore work a most serious disadvantage to the appellee, and they are the only parties to this suit other than the appellant. This Court said in the case of Hester v. Hester, 103 Miss. 13, 60 So. 6, 8, Ann. Cas. 1915B, 428—a decision which turned on the fact that the suit involved a collateral attack on the divorce proceeding, instead of a direct attack, as here—that: "A setting aside of the divorce at this time would render his second marriage and his living with his second wife illegal, and a violation of the laws of the land, and would render illegitimate the children born of the second marriage. We must consider that these children are innocent, and that it is the policy of the law, as far as possible, to preserve a status that would keep these children as the legitimate offspring from a legal marriage." This is a wholesome doctrine, even though the quoted language may not have been necessary to the decision.

The demurrer raised not only the defense of laches which became available to the appellees on the face of the bill of complaint, but also the defense of estoppel, and it also invoked the equitable maxim that "He who comes into equity must come with clean hands." They cite as being directly in point on the second and third of these defenses the case of Joy v. Miles, 190 Miss. 255, 199 So. 771, wherein the Court said: "When the proof discloses, as it does in this case, that a wife seeking to set aside an invalid divorce decree obtained by her husband had become married to another man subsequent to the rendition of such decree, it cannot be said that she comes into a court of equity with clean hands asking for affirmative relief. Moreover, even if it be true—and the chancellor found to the contrary—that she did not know of the decree at the time of her second marriage, such want of knowledge would afford less excuse for having entered into the bigamous relationship with her second husband than if she had known of the divorce proceedings, since she did know that her former husband

was still alive, and that she herself had not obtained a divorce. Nor does the fact that she did not remarry until after her former husband had married another woman, following the rendition of the divorce decree in his favor, prevent his second wife from pleading such fact in defense of a suit to set aside the decree of divorce for the sole purpose of enabling the complainant in such a suit to obtain the life insurance left by the divorced husband at the time of his death, and which was payable to his widow. It is not a question of whether the woman who entered into the second marriage with the man who had obtained the invalid divorce has done so in reliance upon the conduct of the first wife in remarrying. The case is controlled in principle, though not analogous on the facts, by what was said by this court in the cases of Woodson v. (Colored) Grand Lodge of Knights of Honor et al., 97 Miss. 210, 52 So. 457; and Williams v. Johnston, 148 Miss. 634, 114 So. 733.''

But, it is urged by the appellant that the decision in Joy v. Miles, supra, and other cases relied upon by the appellees cannot suspend the operations of the Code chapter on Descent and Distribution in this State, Chap. 1, Title 5, Code 1942, which contains as its only exception to the right of inheritance the inability of any person to inherit who may ''wilfully cause or produce the death of another in any way . . . '' In support of this contention, the appellant cites the case of Williams et al. v. Lee et al., 130 Miss. 481, 94 So. 454, 28 A. L. R. 1124, where the question was one of a resulting trust in favor of a second wife of a bigamous marriage, who had furnished her alleged husband money with which to purchase land, and he had taken the title thereto in his own name in violation of the agreement with her to place it in her name, and wherein the Court said in regard to the contention of the former wife that: ''Chapter 35, Code of 1906 (Chapter 18, Hemingway's Code) regulates the descent and distribution of property in this state. The wife is made an heir to the husband. The courts have no

authority to engraft exceptions on the statute.'' The statute referred to is the same as Section 468, Code 1942, contained in our present code chapter on Descent and Distribution. And, the Court further stated that: ''we cannot give our assent to the proposition that mere knowledge and silence on her (the first wife's) part estopped her from asserting her heirship.'' But, there was no question of divorce involved in that case; it was not a suit brought to have set aside and annulled a decree of divorce. Neither is it the contention of appellees in the case at bar that the failure of the appellant to take steps to set aside the divorce decree suspended the operation of any inheritance statute, nor that her bigamous marriage to the said Shirley suspended any of such statute, but their position is that the sole issue here involved is the validity of the divorce decree itself and the right of the appellant to attack the same after it has been in force for approximately fifty years, after Geo. Stanley had reared a family of children by his second wife, who has relied on the validity thereof.

We have carefully examined all of the cases relied on by the respective parties, except that of Phillips v. Phillips, 4 N. B. Eq. Rep. 115, a case which one of the counsel asserts was decided by a court of New Brunswick; and our examination of the cases included especially those of Woodson v. Colored Grand Lodge, etc., 97 Miss. 210, 52 So. 457; Cratin v. Cratin, 178 Miss. 881, 173 Co. 415, 174 So. 255; Walker v. Mathews, 191 Miss. 489, 3 So. (2d) 820; Williams v. Johnston, 148 Miss. 634, 114 So. 733; McCray v. McCray, 137 Miss. 160, 102 So. 174; Jackson v. Overton, Miss., 96 So. 742; Shrader v. Shrader, 119 Miss. 526, 81 So. 227; together with the cases hereinbefore cited in this opinion. And, we have reached the conclusion that the decision of the trial court in sustaining the demurrer, and in dismissing the bill of complaint upon refusal of the complainant to plead further, should be affirmed on the ground of laches, and because of the disadvantage and injustice that would result to the appel-

lees by a decision to the contrary, without regard to the question of estoppel and failure of the appellants to come into court with clean hands.

The case of Walker v. Mathews, supra, involved the right of one of the several women who had married the man, at a time when he was inelegible to marry because of former marriages, to inherit both his real and personal property under the statutes of Descent and Distribution, where she was living with another husband out of lawful wedlock at the time of his death. Whereas, the bill of complaint in the instant case alleges that Sidney Stanley separated from her second husband upon learning that she had not been divorced from her former one. But, as heretofore stated, we base the affirmance of the decision of the trial court in the case at bar upon the ground stated in the preceding paragraph of this opinion.

Affirmed.