CRAWFORD *v.* BROWN, et al.

Dec. 1, 1952

No. 38534        10 Adv. S. 1        61 So. 2d 344

*W. C. Sweat* and *W. C. Sweat, Jr.,* for appellant.

*J. S. Finch* and *J. D. Finch,* for appellees.

McGEHEE, C. J.

This is a suit to reform a deed which was executed by the complainant, Andrew Crawford, and his wife, on November 4, 1941, and duly recorded on that day, in favor of T. M. Keeton, the ground for relief being that a mutual mistake had been made by the parties as to the description of a parcel of land therein described, assuming that the description is not applicable to the parcel of land actually intended by both the grantor and the grantee to be conveyed; also, to cancel as clouds upon the complainant's title a deed of conveyance of January 4, 1945, from the said T. M. Keeton in favor of O. C. Pruitt; and a deed from the latter to the defendant Clarence M. Brown, of March 26, 1951. All three of these deeds were alleged to contain the same erroneous description, if applicable to the tract of land in question. The bill of complaint also contained a prayer for general relief.

The cancellation of the two last mentioned conveyances was sought on the ground that the deed from Keeton to Pruitt was taken with sufficient notice on the part of Pruitt to put him on inquiry such as would have led a reasonably prudent person to information and knowledge of the location of the tract of land intended by the description in the conveyance from the complainant Crawford to the grantee; Keeton, who was the grantor of Pruitt as aforesaid, and is also sought because the subsequent deed from Pruitt to the defendant Brown was taken by the latter with sufficient notice to put him on inquiry such as would have led a reasonably prudent person to information and knowledge of the location of the tract described in the deed from Crawford to Keeton, since he knew that his own grantor, Pruitt, was not in possession of the land in question, and saw while on the premises, prior to his purchase, that the complain-

ant, Crawford, was in actual possession of the tract of land in question and had continued to keep the same in his common enclosure near his residence, at all times from and after the date of his conveyance to Keeton on November 4, 1941, and was then at the time of defendant Brown's purchase still using the same.

The proof discloses that the Hyatt Estate had been in actual, open, notorious, continuous, and exclusive possession, for a period of from forty to sixty years prior to December 23, 1940, of the W½ of the W½ of Block 27, and all of Block 36 of Terry's Survey of the town of Iuka, and that said Block 36 was immediately south of Block 27 and completely enclosed by the Hyatt Estate as a tract of land 250 feet wide east and west, and 427 feet in depth north and south, extending to and along Indian Creek on the south side thereof; that Block 36 was bounded on the east side by a street; that the complainant Crawford was a tenant of the Hyatt Estate and in possession of the tract of land in Block 27, and all of Block 36 of Terry's Survey of the town of Iuka, prior to his purchase of said tracts of land from the Chancery Clerk, J. C. Jourdan, Jr., as special commissioner, on December 23, 1940; that one Bill Pyle, who was one of the heirs of the Hyatt Estate, when undertaking to represent the other heirs of the estate, all of whom were adults, and whether with or without proper authority from them to do so, had proposed to sell the land to the complainant Crawford at the price of $675.00, and with the understanding that Block 36 extended south a depth of 427 feet to Indian Creek as the southern boundary thereof, and all of which had been and was then under fence; that they thereupon learned that it would be necessary that the land in Block 27 and all of Block 36 of Terry's Survey should be sold for partition through the chancery court on account of one of the heirs being non compos mentis; that the sale was made by the special commissioner to the complainant Crawford on December 23, 1940, and both tracts were turned

over to him as purchaser and owner thereof, and he went into possession of same as such purchaser and owner while the enclosure of Block 36 still continued to be an area of 250 feet in width east and west and 427 feet in depth north and south; and that he continued in the possession of all of the said area and kept the same under enclosure until the defendant Pruitt, who is one of the appellees on this appeal, acquired his deed from the defendant T. M. Keeton on January 4, 1945, containing the following description: "Part of Block thirty-six (36) Terry's Survey of the town of Iuka, Tishomingo County, Mississippi, described as beginning at the southeast corner of said block, run thence north along the east line 135 feet, thence west parallel to the south line 150 feet, thence south parallel to the east line 135 feet, thence east on the south line 150 feet to the point of beginning * * *," the tract of land being thus described by the identical description as that contained in the deed from the complainant Crawford to the said T. M. Keeton on November 4, 1941.

The precise question is whether the foregoing description should be applied to a lot of the dimensions last above stated in the southeast corner of the 250-by-427 foot area beginning at a point on the north side of the creek bank for the southeast corner thereof, or should be applied to a lot of such dimension farther north in the southeast corner of Block 36 on the theory that Block 36 is only 250 feet square.

The defendant introduced as a witness the chancery clerk, who had sold part of Block 27 and all of Block 36 to the complainant Crawford on December 23, 1940, while acting as special commissioner in the partition of this property on behalf of the heirs of Captain Hyatt, as aforesaid, and the clerk testified that the official plat of Terry's Survey of the town of Iuka had been lost or destroyed, without stating the approximate year or decade within which this occurred, and he identified the original plat thereof from which he understood the

official one had been copied. The original plat of this survey, as identified by the clerk, and which he said was the one from which the lost official plat had been copied "according to the story that come to me," but as to which the witness further said "I don't know what it is," fails to show the dimensions of any block in the survey, or the location of Indian Creek thereon. This original plat, does not appear to have ever been signed or to have ever been on file. But it was presented in open court by agreement of counsel, and a photostatic copy thereof is contained in the record on this appeal. Blocks 27 and 36 are shown thereon, without any dimensions thereof being given, as aforesaid, and there are 12 blocks directly to the west and 9 directly to the east thereof, none of which are shown to contain any numbers or dimensions. Apparently the blocks in Terry's Survey are of irregular size, and the clerk so testified. There are other blocks therein than those above mentioned. The defendant Pruitt owns Block 37 directly across the street from Block 36, and he claims down to the creek on the south and has been in possession down to the creek for 26 years, and has his cotton gin within 100 feet of the creek. Block 36 is on the south row of blocks in the survey, and since Indian Creek is not shown thereon, and since what was known as Block 36 was under one enclosure down to Indian Creek, it does not appear that there was anything of record to indicate that Block 36 did not cover the area of 250 feet in width by 427 feet in depth to Indian Creek, according to the way the same was enclosed at the time of the Commissioner's sale to the complainant Crawford, and long prior thereto.

But assuming that the official plat became lost or destroyed subsequent to the commissioner's sale, that it was on file at the time of the partition sale to the complainant, and further that it was copied from the original introduced in evidence, it would nevertheless be true that the plat, which gave no dimensions of any block in the survey, would not have indicated at all while the

Hyatts were in possession and when the partition sale was had, that Block 36 was only 250 feet square, as contended by the defendants and as found by the trial court.

The clerk admitted in his testimony that those who had claimed Block 36 had always "claimed it to the creek." It appears that Block 36 was described in the petition of the Hyatt heirs for partition, in the decree ordering the partition sale, and in the commissioner's deed to complainant Crawford merely as "all of Block 36" of the said Terry's Survey without any dimensions thereof being given either in any part of the partition proceedings or by the plat on file, if, indeed, there was one on file at that time. In fact, Captain Hyatt, and later the Hyatt Estate, actually *owned*—at least by reason of adverse possession against all the world—the area 250 feet in width by 427 feet in depth which they had kept under fence as Block 36 and used as their own for much longer than ten years prior to the commissioner's sale; and the complainant Crawford having gone into possession thereof, as thus enclosed, on December 23, 1940, now actually *owns*, and not merely claims, all of said area down to the creek except whatever lot he conveyed away to his grantee, Keeton, on November 4, 1941, since he has been in the open, notorious, adverse, and continuous possession of the remainder of the entire area extending south to Indian Creek for more than ten years between the date of the commissioner's sale to him on December 23, 1940, and the purchase by the defendant Brown from Pruitt on March 26, 1951.

Of course, we are not unmindful of the fact that if the description in the deed from the complainant to Keeton should be limited to a tract of land in the southeast corner of Block 36 upon the assumption that the block is only 250 by 250 feet square, the complainant had not held such tract in adverse possession for a period of ten years between the date of his deed to Keeton on November 4, 1941, and the date of the deed from Pruitt to the defendant Brown of March 26, 1951; nor of the

further fact that under the rule announced in Hafter, et al v. Strange, 65 Miss. 323, 3 So. 190; Baldwin v. Anderson, 103 Miss. 462, 60 So. 578; and Jones v. Grimes, 115 Miss. 874, 76 So. 735, there is an exception to the general rule that **(Hn 1)** the possession of land by the grantor is not, after the recording of a deed executed by him, notice to an innocent purchaser for value from his grantee of the land, where such possession alone is relied upon to constitute the notice. But we are of the opinion that under all the facts and circumstances of this case hereinbefore set forth and to be hereinafter mentioned neither the purchaser from the complainant's grantee nor the subsequent purchaser Brown were innocent purchasers for value without notice, since they had notice of other facts to put them upon inquiry separate and apart from the fact that the complainant continued in the possession and use of the lot now in controversy, that is to say, the lot in the southeast corner of Block 36 if it be assumed that the block is only 250 by 250 feet square.

**(Hn 2)** The defendant Keeton, as grantee of the complainant, conceded in his answer and in his testimony that the complainant intended to sell and he intended to buy a lot in the southeast corner of Block 36 upon the theory that it extended to Indian Creek and that therefore, as to him, the complainant was entitled to a reformation of the deed on the ground of mutual mistake unless the description therein is applicable to the lot in the southeast corner of the block as thus extended. The defendant Pruitt, as grantee of Keeton, conceded that his grantor Keeton had proposed to sell to him the lot across the street from grantee's gin, and it is not disputed as aforesaid that the lot of which the grantee Pruitt took possession and stored his cotton on, and exercised other acts of ownership and control over, is across the street from the gin and therefore in the southeast corner of Block 36 when considered as containing an area of 250 feet by 427 feet and extending down to Indian Creek.

For more than five years thereafter Pruitt remained in possession of the lot as thus located after it had been excluded from the enclosure of the complainant, and he asserted no claim to any part of the block then left within the complainant's enclosure. The defendant Brown, as a grantee of Pruitt, had gone upon the premises before he purchased, and he necessarily saw that a lot of the dimension of the one which he proposed to purchase from Pruitt had been excluded from the enclosure of the complainant bordering on the street to the east and on Indian Creek to the south; and he also saw that a lot of equal dimension farther north if carved out of the southeast corner of Block 36 on the theory that said block was only 250 by 250 feet square would have to come out of complainant's then enclosure near his residence, and which the complainant had kept in his possession for nearly ten years subsequent to the complainant's sale to Keeton. Morever, he did not rely on any plat of record that would disclose the dimensions of Block 36, and he was therefore put upon inquiry as to whether or not Block 36 would embrace the entire enclosure of the same as maintained by the Hyatt Estate long prior to the commissioner's sale, and by the complainant until after the lot near the creek had been excluded by the complainant from his own enclosure after Brown's own grantor, Pruitt, had purchased in 1945 from the complainant's grantee, Keeton. Moreover, an inquiry by Brown would have led to the further fact that no part of the entire tract of 250 feet by 427 feet extending down to the creek had ever been assessed otherwise than as Block 36, unless he was entitled to assume the part near the creek had escaped taxation, and that if the block extended that far, then the description contained in the deed from the complainant to Keeton, and from Keeton to Pruitt, would be applicable only to a lot 135 feet north and south by 150 feet east and west in the southeast corner of the said block as extended to the creek.

Then, too, it is important to note, though not alone controlling, that Brown was not attempting to purchase a lot which some nonresident had under enclosure or which a resident of some other part of the town had under enclosure, but, on the contrary, he was undertaking to buy and to build a house on a lot in close proximity to the residence of the complainant, and which the latter had under enclosure as a part of his residence property, and the defendant Brown intended to take possession of the same at the risk of a protest from complainant and to build his house within the latter's enclosure.

The trial judge found as a fact that at the time of the commissioner's sale on December 23, 1940, "the tract of land which was thought to be Block 36 was under fence, and the fence extended down to the bank of Indian Creek, and the complainant Crawford thought that Block No. 36 included all the land that was under fence." The chancellor further found that "the proof in this case shows that the lot Keeton intended to buy, and the one the complainant intended to sell, was a strip of land 135 feet by 150 feet along the north bank of the creek." He also found, however, that when the complainant sold to his grantee, Keeton, he did not own the lot 135 feet by 150 feet along the north bank of the creek, but did own all of Block 36 at that time, which he found to contain an area of 250 feet by 250 feet, and that therefore the defendants, Keeton, Pruitt, and Brown acquired, by their respective deeds, a lot 135 by 150 feet in the southeast corner of the block upon the theory that it was only 250 feet square. However, we are of the opinion that, as heretofore said, the complainant Crawford acquired this lot along the north bank of the creek as a part of the enclosure claimed as Block 36 by the Hyatt Estate when he purchased at the commissioner's sale; and this case can therefore be distinguished from the case of Cusimano, et al. v. Spencer, et al., 194 Miss. 509, 13 So. 2d 27, in that in the Cusimano case the estate did not own by adverse possession or otherwise one of the three

acres involved in the commissioner's sale, whereas in the instant case the Hyatt Estate did own all of the land enclosed as Block 36.

The proof further discloses that shortly after the defendant Pruitt received his deed from Keeton, he cut the east fence at a point along the street down toward the southeast corner of what the complainant Crawford claimed and had enclosed as Block 36, as it extended down to Indian Creek, and then stored some cotton there, because of a fire at his gin, and began to exercise acts of ownership and control of a tract, in such southeast corner, extending 135 feet north and south by 150 feet east and west, including the cutting of some timber therefrom; that after Pruitt cut the fence and some of the complainant Crawford's cattle got out of the enclosure there, the latter, upon inquiry as to why the fence had been cut, then learned for the first time that Pruitt had purchased from Keeton, and he therefore assumed that the purchase covered the tract where the cotton was stored in the southeast corner of the enclosure, since, according to the testimony of both the complainant Crawford and his grantee Keeton, the former had intended to convey to the latter a tract in the southeast corner of Block 36 near the creek, and the latter testified that he intended to purchase a tract there as aforesaid; that when Keeton was buying this lot he and the complainant Crawford measured off a tract in the southeast corner of the enclosure beginning at the creek and of the dimensions hereinbefore last described; that after Pruitt purchased from Keeton the complainant put down posts and moved his fence back to a point so as to exclude from his enclosure of 250 by 427 feet this same tract in the southeast corner thereof of which Pruitt had taken possession, and this all occurred under the observation and with the acquiescence of Pruitt, who was then about the gin in plain view and passed along once where the men were at work; that thereafter, for a period of more than five years prior to his sale to Brown, the defendant

Pruitt did not enter possession of the tract further north now in controversy and within the enclosure of the complainant Crawford; that Pruitt in fact testified at the trial that before he obtained his deed from Keeton, the latter had proposed to sell to him his lot across the street from Pruitt's gin, and it appears without dispute that the gin was located across the street to the east of the lot where he cut the fence, stored his cotton, and took full control and possession; that while Pruitt further testified that Keeton did not state particularly that the lot which he proposed to sell was down next to the creek, it is clear that this is what the witness understood, since he admitted that Keeton told him that he wanted to sell him the lot across the street from the gin.

Moreover, when Pruitt acquiesced in the action of the complainant Crawford in moving his fence back in 1945 so as to exclude the tract only that Pruitt had taken possession of and so as to retain in his own enclosure and continue to use the tract involved in this suit, he thereby acknowledged by his own construction of his purchase from Keeton that he understood that he had bought from Keeton the lot near the creek of the dimension described; and this situation continued until March 26, 1951, when Pruitt conveyed to the defendant Brown by the same description that was contained in the deed from the complainant Crawford to Keeton, and from Keeton to Pruitt.

It is undisputed that before Brown purchased the tract of land from Pruitt he had observed on the ground that the complainant had under fence and was using all of the area of 250 feet east and west by 427 feet north and south except that part which he had excluded from his enclosure in 1945 in the southeast corner of the original enclosure; that when the defendant Pruitt pointed out to his proposed grantee, Brown, a tract of land 135 feet north and south by 150 feet east and west, and which was located in the complainant's then enclosure to the north of the tract which had been excluded therefrom,

the purchaser, Brown, then saw that it was under fence and within Crawford's enclosure; that he knew that the enclosure belonged to the complainant Crawford, since he thereupon inquired of his proposed grantor Pruitt as to whether or not the complainant Crawford had had the particular tract which Pruitt proposed to sell to Brown under fence long enough to cause the latter any trouble; that Pruitt replied "No;" that Brown, however, also inquired of the chancery clerk, Jourdan, as to whether Crawford had the land under fence long enough to give him any trouble and was advised by the clerk that he had not (the clerk evidently having in mind the period intervening between the date of Crawford's deed to Keeton on November 4, 1941, and Pruitt's deed to Brown on March 26, 1951); that without making any inquiry of the complainant Crawford, who had the tract under fence and was using the same as a part of an enclosure near his residence, Brown proceeded to purchase from Pruitt, to cut the complainant's enclosure, and to build a residence inside thereof over the protest of the complainant.

If, when the defendant Brown went upon the ground with his proposed grantor, Pruitt, and saw that the tract of land which Pruitt was pointing out to him was within the enclosure and not far from the residence of the complainant Crawford, and at a time when he was standing less than 50 feet from a tract of the same dimensions which had been excluded next to the street and near the creek from Crawford's enclosure, he had gone to the trouble to inquire of Crawford, who lived only a few hundred feet therefrom, by what authority he was holding the tract of land and using the same in his enclosure, he would have learned, as he did later when he started to build his house within the enclosure, that Crawford had deeded it to Keeton under an erroneous description, unless Block 36 actually then extended to Indian Creek, and that Crawford had the equitable right to have the deed to Keeton reformed on the ground of

mutual mistake, in the event the description did not correctly locate the property next to the creek as a part of the southeast corner of Block 36; and upon obtaining such information from the complainant Crawford, he could have, according to the testimony of Keeton, easily verified the same by an inquiry from Keeton as to where the latter understood he had bought the tract of land. Brown had in mind before he purchased from Pruitt that the complainant Crawford was unquestionably claiming the tract in question within the enclosure as his own, after he had inquired of others to to whether Crawford had had it under fence long enough to give him trouble if he purchased the same. Therefore, an inquiry directed to either Crawford or Keeton would have led to the information that the complainant Crawford was then entitled to a reformation of his deed to Keeton as against Keeton and that Pruitt purchased with notice of this right; and Brown was therefore bound and charged with notice of the equity that the complainant Crawford had in the premises.

It was stated in the case of First National Bank of Laurel v. Johnson, 177 Miss. 634, at page 643, 171 So. 11, that the rule is that **(Hn 3)** "when, in respect to a matter in which he has a material interest, a person has knowledge of such facts as to excite the attention of a reasonably prudent man and to put him upon guard and thus to incite him to inquiry, he is chargeable with notice, equivalent in law to knowledge, of all those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed. 20 R. C. L. pp. 346-9, 46 C. J. pp. 543-5." Again, in the case of Stanley v. Stanley, et al., 201 Miss. 545, 29 So. 2d 641, it was held that "Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of the facts which would lead an ordinarily prudent man

to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts,'' this language having been quoted in the Stanley case from 20 R. C. L. 346.

It follows from the foregoing views that we are of the opinion that the learned chancellor was in error in dismissing the bill of complaint filed by the appellant Crawford, and in cancelling his claim to the lot in question upon the cross-bill of the appellee Brown, and that the case should be reversed and decree rendered here in favor of the appellant, to the extent of adjudging that he still owns the lot in question, upon which the defendant Brown has built a dwelling house, and cancelling the claim of the said appellee as a cloud upon appellant's title thereto; but that the cause should nevertheless be remanded in order that the rights and equities of the parties may be adjusted in a manner not inconsistent with the views hereinbefore expressed in this opinion.

Reversed and judgment rendered here in favor of the appellant as to the title of the lot involved, and remanded for such further proceedings as may be proper.

*Alexander, Lee, Kyle* and *Ethridge, JJ.,* concur.