MANAR, et al. *v.* SMITH, et al.

No. 41049          March 16, 1959          109 So. 2d 652

*T. W. Davis, Jr.,* Hattiesburg; *Hugh McIntosh,* Collins, for appellants.

*L. D. Pittman,* Raleigh; *O. B. Triplett, Jr.,* Forest; *Wm. Harold Cox, R. G. Nichols, Jr., Wells, Thomas & Wells, Martha Gerald,* Jackson, for appellees.

RoBERDS, P. J.

This proceeding involves the determination of the title to one hundred and twenty acres of land located in Smith County, Mississippi. Appellants are the heirs-at-law of Miss B. E. Manar, Deceased, and persons who claim an interest in the land under said heirs. These heirs and persons claiming under them filed a bill in this cause May 23, 1957, asserting that they are the owners of said land. Appellees were the defendants to that bill. They denied that appellants had any interest in the land. They averred that they are the owners of the land. The chancellor held (1) that the appellees had title to the land under a foreclosure sale of a deed of trust executed by Miss Bertie E. Manar, and other subsequent conveyances of the land; and (2) by virtue of actual possession and claim of ownership under the ten-year Statute of Limitations (Section 711, Miss. Code of 1942); and (3) that the appellants were estopped by laches to maintain their suit. The chancellor dismissed the bill, from which action this appeal was taken. We need not pass upon all of the stated contentions. If either holding of the chancellor's is sustained, his action

in dismissing the bill will be affirmed. His action should be affirmed if there is substantial evidence to support his conclusions. ██ █ Aside from the other contentions, we are clearly of the opinion that the chancellor was correct in his holding that appellees have title to the land under the ten-year's adverse possession statute.

Said Section 711 is as follows: ''Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, in whatever way such occupancy may have commenced or continued, shall vest in every actual occupant or possessor of such land a full and complete title, saving to persons under the disability of minority or unsoundness of mind the right to sue within ten years after the removal of such disability, as provided in the first section of this chapter; but the saving in favor of persons under disability of unsoundness of mind shall never extend longer than thirty-one years.''

It may be conducive to clarity to set out in chronoligical order the various acts by appellees bearing upon the acquisition of title by adverse possession under the foregoing statute.

Miss Bertie E. Manar acquired title to forty acres of the land by a deed from T. S. Manar and Mrs. C. A. Manar, dated March 5, 1915, and that deed contains a reservation as to timber, to which we shall refer later. Miss B. E. Manar acquired title to the remaining eighty acres of the land by a deed dated September 27, 1915, executed by T. S. Manar and Mrs. C. A. Manar.

On October 23, 1915, Miss Manar executed a deed of trust on the land to H. T. Jolly, Trustee, the beneficiary being Rosenthal-Sloan Millinery Company. This deed of trust secured a promissory note of the grantors in the sum of $1,765.13, and was due October 22, 1918. Miss Manar departed this life intestate September 21, 1923. On December 29, 1923, said deed of trust was fore-

closed and the land was purchased by D. A. Wilkerson. The legality of that foreclosure is attacked by appellant because of the substitution of the trustee therein by an officer of the beneficiary corporation and not by the corporation itself. As above-stated, the chancellor held the foreclosure sale to be valid. We do not pass upon that question. We cite such foreclosure as bearing upon title by adverse possession.

In 1926 Homer Currie purchased the land at a tax sale for nonpayment of the state and county taxes. He recorded the deed he received two years later. That deed, by its wording, conveyed an absolute title to the property.

Currie had the land surveyed, the lines blazed, the corners established, and had the quantity of timber thereon estimated. He borrowed money on the land and executed a deed of trust to a bank to secure the loan. The deed of trust was recorded.

In 1927 Currie was adjudged by the Chancery Court of Smith County to be the owner of the land under the said tax sale, subject to certain timber rights of Ham Lumber Company and Eastman, Gardner Lumber Company, who had purchased certain timber from Currie.

In 1928 Currie cut from the land posts and firewood for himself and for others.

In 1929 he cut and removed timber from the land and sold logs to other persons in commercial quantities. He also cut posts and firewood from the land.

In 1930 he cut and sold other logs from the land, and he executed an oil and gas lease thereon, which was duly recorded.

In 1931 he again cut and sold from the land timber in commercial quantities. He cut posts and firewood therefrom. He did this also in the year 1932, and for a number of years to and including 1936.

In 1937 he conveyed the land by deed to Luther Currie. Luther Currie borrowed money on the land and executed

a deed of trust to H. D. Miller thereon. Both the deed and trust deed were duly recorded.

In 1939 Luther Currie executed an oil and gas lease on the property. During that year he reconveyed the land to Homer Currie.

In 1941 Homer Currie listed forty acres of this land as constituting a part of his homestead.

In 1942 Homer Currie executed a timber deed to Homer Tullos. The deed was recorded and Tullos erected a sawmill on the land and cut timber therefrom. Homer Currie borrowed $875 from the Bank of Raleigh and executed a deed of trust on the land to secure payment thereof.

Again in 1943 Homer Currie executed a timber deed to Tullos, who cut timber from the land during that year. Homer Currie also executed an oil and gas lease on the property to H. R. Smith, who assigned the lease to the Magnolia Petroleum Company. Tullos conveyed some of the timber to Wilkerson. Wilkerson executed to the Bank of Raleigh a deed of trust on the timber he had purchased.

In 1944 Currie conveyed the land to Lon V. Smith, subject to existing mineral rights.

February 23, 1945, Wilkerson conveyed the land by quitclaim to Homer Currie. In 1945 Lon V. Smith executed a number of mineral conveyances.

In 1950 Currie was paid rentals under the oil and gas leases.

In 1952 and 1953 Clark, under contract from Currie, cut and removed certain timber on the premises. In 1953 Currie executed another deed of trust on the land to the Bank of Raleigh.

In 1954 Clark reconveyed to Currie the uncut timber.

In 1955 Currie executed an oil and gas lease to Quisenberry, which was assigned to the California Company. The rental was paid to Currie.

In 1956 Currie executed a mineral deed to Bralver. In 1956 Currie executed a deed to G. W. Luckey, reserving the minerals. Currie also executed a mineral deed to Pittman; and Luckey executed a trust deed to the Smith County Bank.

There are other conveyances we deem unnecessary to set out.

All of the afore-mentioned conveyances were duly placed of record.

We have said nothing of the payment of taxes because that question was covered by an agreement between the attorneys. That agreement stipulates that Homer Currie paid all of the ad valorem taxes for the years 1926 and 1927 and ''all successive years thereafter through 1955.''

It was further agreed that the lands were originally assessed for ad valorem taxes for the years 1928 and 1929 to D. A. Wilkerson ''but that his name is stricken out with a pen and over it is written in longhand Homer Currie as the name of the owner on the original land assessment rolls for the county for those years, and that such lands were for all years thereafter continuously assessed for ad valorem taxes to the defendant, Homer Currie, as owner thereof, through the year 1955, as stated; except that in the year 1937 the defendant, Homer Currie, sold all of the land in suit to his brother, Luther Currie, who held the title to the property for approximately three years through June 21, 1940, and during the period of his ownership of the property it was assessed for ad valorem taxes for those years to Luther Currie and that the original receipt of the sheriff and tax collector of this county for the payment of ad valorem taxes on the property in suit for such years, 1928 and 1929, show that the defendant, Homer Currie, paid the taxes and the property was assessed to him.''

The record also contains this agreement: ''It is further agreed that the land in suit was assessed to the

defendants, the Luckeys, for the years 1956 and 1957 and that the defendant Luckeys have paid all such ad valorem taxes on said lands for the year 1956.''

It was further agreed that the timber on the land was assessed to and the taxes thereon were paid by Ham Lumber Company for the year 1924. A further agreement recites that the timber on the land was assessed to Eastman, Gardner & Company for the years 1926 and 1927 and that on December 18, 1926, Eastman, Gardner & Company paid the taxes on the timber on the land in suit.

It should be further stated that, according to the evidence, Homer Currie policed the land from the time he purchased it at the tax sale.

The testimony further shows that the land in question was low and swampy; that two creeks ran through it; that it frequently overflowed and only about three or four acres thereof were suitable for cultivation; and the land was not fenced.

On behalf of the appellants there was evidence that cattle roamed at large upon the land, and that some of the appellants executed oil and gas leases thereon. There was some other testimony evidencing a claim to the property on behalf of the appellants as against the claim of ownership of appellees. It is noted that the acts of ownership of appellants consisted largely of conduct on the part of persons other than appellants. Since it is only necessary that the conclusion of the chancellor be supported by substantial testimony, and since it is clear that what has been said constitutes substantial evidence in support of his conclusions, we do not detail other acts by the appellants.

On the question of adverse possession, the chancellor expressly held ''That the defendant (Currie), through whom the other defendants claim their respective interests in the property in suit, acquired and owned a record title to the land in suit by mesne conveyance from

E. M. Lane, substituted trustee in the deed of trust from Miss B. E. Manar to Rosenthal-Sloan Millinery Company * * *.'' The chancellor further expressly found ''That the lands in suit are wild timber lands and were adversely occupied by defendant (Currie) who exercised every possible act of exclusive dominion and possession over said land under color of title and claim of ownership for more than ten years prior to May 23, 1957, openly and notoriously to the exclusion of and adversely to the world * * *.'' It is evident that the acts of ownership of the land and timber were sufficient to give notice to the world that appellees were claiming title to the property. The following cases deal with the rules and principles applicable in such cases: McCaughn v. Young, 85 Miss. 277, 37 So. 839; Jagoe v. Carrier Lumber & Mfg. Company, 119 Miss. 564, 81 So. 132; Geoghegan v. Krauss, 288 Miss. 231, 87 So. 2d 461; Broadus v. Hickman, 210 Miss. 885, 50 So. 2d 717; Crawford v. Brown, 215 Miss. 489, 61 So. 2d 344.

The deed dated March 5, 1915, from T. S. Manar and wife, Mrs. C. A. Manar to Miss Bertie E. Manar, referred to above, conveyed forty acres of land and reserved certain timber from the operation of said deed. Appellants attach much importance to that fact and urge that this prevented the statute of limitations running against the timber on the land at the time of the filing of the bill. We do not clearly understand the import of the contention. The deed of trust given by Miss Manar to the Millinery Company mentioned above did not exempt the timber and the trustee's deed under the foreclosure of that deed of trust did not exempt it. Neither was the timber exempt from the tax sale and the other conveyances which affected the title to the land. In other words, as far as the conveyances of the land were concerned, made after March 5, 1915, all right to the timber on the land was conveyed and vested as was such title to the land itself. The timber was being con-

ceyed and the acts of ownership over the timber were being exercised a much greater length of time than ten years, the time in which title might vest by proper acts of adverse possession.

██ ■ Appellees moved to strike the transcript of the record in this case on the ground that such record contains many errors and omissions. These errors and omissions are set out in detail in the motion. Appellants admit the errors and omissions as specified in the motion and appellants ask this Court to issue a certiorari to the clerk of the chancery court to correct and remedy such errors and omissions. We have carefully examined the motion and the answer, as well as the effect of the errors and omissions, and we have concluded that these errors and omissions are not such as will mislead the court and that they are not so confusing as not to be understandable, and we also think they are not particularly material insofar as the effects thereof are concerned. Evans v. Ham, 98 Miss. 731, 54 So. 250. Both motions are overruled. Affirmed.

*Hall, Lee, Kyle and Holmes, JJ.,* concur.