271 So.2d 920 (1973)
J.H. PRUETT
v.
MISSISSIPPI VALLEY TITLE INSURANCE COMPANY.
No. 46937.
Supreme Court of Mississippi.
January 2, 1973.
Rehearing Denied January 29, 1973.
Sullivan, Smith & Hunt, Walter W. Thompson, Clarksdale, for appellant.
Semmes Luckett, William O. Luckett, Clarksdale, Vardaman S. Dunn, Jackson, for appellee.
GILLESPIE, Chief Justice:
J.H. Pruett (Policyholder) sued Mississippi Valley Title Insurance Company (Insurer) in the Circuit Court of Coahoma County alleging a loss under the terms of a title insurance policy. Insurer pleaded that the loss (1) was expressly excepted, and (2) was barred by the six-year statute of limitations. The court sustained Insurer's motion for a directed verdict on the ground that the loss was expressly excepted from the coverage of the policy. Although the trial judge indicated he was not ruling on whether the statute of limitations applied, he said, "If I had to make a decision on it, I would say the statute of limitations also applied." Judgment was thereupon entered for Insurer and Policyholder appealed.
On April 19, 1963, Policyholder purchased 360 acres of land for $60,000. On May 20, 1963, Insurer issued to Policyholder a policy of title insurance whereby it agreed to pay Policyholder all loss or damage not exceeding $60,000,

*921 [W]hich the insured shall sustain by reason of any defect in the title of the insured to the estate or interest of the insured in the real estate described under Schedule A herein, or by reason of liens or incumbrances against the same as of the date hereof, excepting the defects, estates, interests, objections, liens or incumbrances mentioned in Schedule B herein, or excepted by the conditions of this policy hereto annexed and incorporated herein as a part of this contract.
Schedule B provides in part as follows:
There is excepted from this policy all rights of parties in possession, deficiency in quantity of land, boundary line disputes, roadways, unrecorded servitudes or easements, or any matters not of record which would be disclosed by an accurate survey and competent inspection of the property.
Under Paragraph 6 of the "Conditions of This Policy," it is provided that nothing contained in the policy shall be construed as insuring
(7) against loss or damage by reason of the rights, titles or occupancies of parties in actual possession of any part of the premises herein described at the date hereof, other than the insured... .
At the time Policyholder purchased the land and when the Insurer issued its title policy there was of record an instrument granting Hobson Bayou Drainage District No. 2 (Drainage District) a perpetual easement 200 feet wide measured 100 feet on each side of and at right angles to the center line of a drainage ditch traversing the lands in question from north to south. The instrument granted Drainage District the right to maintain and improve the drainage ditch and spread the excavated dirt from the ditch on land adjacent to the ditch within the easement right-of-way. Policyholder owned the land to the north of the subject lands when the latter was acquired and he knew that a drainage ditch 25 to 40 feet wide traversed his lands north of the land covered by the title policy and continued on across the latter. He knew that Drainage District owned the ditch traversing his lands to the north and assumed it had a "ditch easement" but did not know Drainage District had a 200 foot easement, and he did not make any inquiry prior to the issuance of the title policy.
The policy issued by Insurer did not except the recorded instrument granting Drainage District the 200 foot easement across the lands in question.
In 1969, more than six years from the date of the title policy, Drainage District entered the land described in the title policy and cleaned out the drainage ditch traversing said land and spread the dirt on Policyholder's crops. Policyholder then learned of the recorded easement and made demands on Insurer under the title policy for damages sustained as a result of the Drainage District's easement.
The principal question is whether the loss in question is excepted from the coverage of the policy under Paragraph 6(7) of "Conditions of This Policy." It is the contention of Insurer that because the drainage ditch traversed the property described in the policy, Drainage District was in "actual possession" of a part of the premises and therefore any damage flowing from the existence of the easement owned by it was excluded under the terms of the policy. Insurer relies on Shaver v. National Title & Abstract Co., 361 S.W.2d 867, 98 A.L.R.2d 531 (Tex. 1962), and Guarantee Abstract & Title Insurance Co. v. St. Paul Fire & Marine Insurance Co., 216 So.2d 255 (Fla.App. 1968). Both of these cases involved pipelines buried beneath the surface of the land with no surface indications that a pipeline was buried in the soil. Insurer contends that the two cited cases are authority for its position because both opinions indicate that the decision would have been otherwise if there had been surface indication of the existence of the underground pipelines which was sufficient to put a purchaser on inquiry as to the rights of the possessor. *922 We do not think these cases are authority on the question before us. The parts of the opinions relied upon by Insurer were not essential to the decision in either case.
Insurer also relies upon six Mississippi cases: King Lumber Industries v. Cain, 209 So.2d 844 (Miss. 1968); Stanley v. Stanley, 201 Miss. 545, 29 So.2d 641 (1947); First National Bank of Laurel v. Johnson, 177 Miss. 634, 171 So. 11 (1937); State v. Allen, 69 Miss. 508, 10 So. 473 (1891); Buck v. Paine and Raines, 50 Miss. 648 (1874); Parker v. Foy, 43 Miss. 260 (1870). All these cases involve questions of what is sufficient to put a purchaser on notice as a matter of property law. They involve a different principle of law than that now before the Court. In the instant case, we have for consideration the construction of an insurance policy and whether the loss is excepted by the provisions of paragrpah 6(7) of "Conditions of This Policy." Moreover, as hereinafter indicated, the purpose of said paragraph 6(7) when considered in pari materia with the other provisions of the title policy is to relieve the insurer from insuring against unrecorded rights of third parties in actual possession.
Under Schedule B it is provided that "unrecorded servitudes or easements, or any matters not of record which would be disclosed by an accurate survey and competent inspection of the property" are excepted from the policy. Under "Conditions of This Policy," paragraph 3, it is provided that the policy does not cover loss or damage by reason of "claims undisclosed of record arising under any act, thing or trust relationship," etc. Reading the policy in its entirety, we hold that the purpose served by paragraph 6(7) of "Conditions of This Policy," is to except from the coverage of the policy the rights of parties in actual possession whose right or title is not of record. Therefore, we find it unnecessary to belabor the question of whether Drainage District was in actual possession of the ditch. Its easement was of record and there is nothing in the policy that suggests that the Insurer is not liable for damages flowing from recorded instruments which were not specifically excepted from coverage.
Emphasis is placed by Insurer upon the fact that the drainage ditch traversed the lands and appellant ought to have known that it belonged to Drainage District. This would be significant if the only rights the Drainage District had was in the ditch itself and the easement was not of record. Policyholder bought the land and received the policy with knowledge that the ditch traversed his land and he may not predicate damages on the mere existence of the ditch. For this is excepted from coverage under Schedule B as a fact disclosed by a competent inspection of the property. But since the purpose of the exceptions provided in Paragraph 6(7) of "Conditions of This Policy" is to protect the Insurer against unrecorded titles of parties in actual possession, it follows that Policyholder is entitled to recover for any damages flowing from the existence of the recorded instrument other than the mere existence of the ditch across his land. In our opinion, one of the reasonable expectations of a policyholder who purchases title insurance is to be protected against defects in his title that appear of record.
We hold that the trial court erred in granting the peremptory instruction in favor of Insurer on the ground that the loss sued for was excepted from the coverage of the policy. Therefore, we find it necessary to pass upon the question whether the statute of limitations barred the action, a question argued in the briefs.
Insurer contends that the action was barred by the six-year statute of limitations because the title policy was issued on May 20, 1963, and suit was not filed until July 8, 1970. It is argued that the contract, if it was breached, was breached at the time of its issuance. Policyholder contends in effect that a cause of action accrues when he sustains an actual injury or discovers the defect in his title.
*923 None of those cases cited by Insurer involved title insurance. In Shaver, supra, the Texas Court held that the statute did not begin to run until the plaintiff discovered the existence of the pipeline easement. It would seem to be an anomaly to hold that the statute of limitations begins to run against recorded defects in the policyholder's title from the date of the issuance of the title policy. Policyholder ought not to be required immediately upon purchasing title insurance to have his own title search made. That is one of the reasons he purchases title insurance. We hold the statute of limitations began to run whenever the defect became known to Policyholder. For the reasons stated, the case is reversed and remanded for further proceedings consistent with this opinion.
Reversed and remanded.
RODGERS, P.J., and INZER, ROBERTSON and BROOM, JJ., concur.